## STATE OF CONNECTICUT *v.* INDE FARIA
(SC 16190)

McDonald, C. J., and Katz, Palmer, Sullivan and Vertefeuille, Js.

Argued May 24—officially released September 26, 2000

*Mark Rademacher,* assistant public defender, with whom, on the brief, was *Scott Leventhal,* certified legal intern, for the appellant (defendant).

*Paul E. Murray,* supervisory assistant state's attorney, with whom, on the brief, was *Kevin T. Kane,* state's attorney, for the appellee (state).

*Opinion*

MCDONALD, C. J. The issues in this appeal are: (1) whether the sentence imposed on the defendant, pursuant to the persistent dangerous felony offender statute, General Statutes § 53a-40 (f),[1] after his retrial was more severe than the sentence he received as a persistent dangerous felony offender after his original trial and, therefore, was presumptively vindictive and violative of the defendant's due process rights under *North Carolina* v. *Pearce,* 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969); and (2) whether the trial court improperly

---

[1] General Statutes § 53a-40 (f) provides: "When any person has been found to be a persistent dangerous felony offender, and the court is of the opinion that his history and character and the nature and circumstances of his criminal conduct indicate that extended incarceration and lifetime supervision will best serve the public interest, the court, in lieu of imposing the sentence of imprisonment authorized by section 53a-35 for the crime of which such person presently stands convicted, or authorized by section 53a-35a if the crime of which such person presently stands convicted was committed on or after July 1, 1981, shall sentence such person to a term of imprisonment of not more than forty years and, if such person has, at separate times prior to the commission of the present crime, been twice convicted of and imprisoned for any of the crimes enumerated in subdivision (2) of subsection (a) of this section, sentence such person to a term of imprisonment of not more than life."

instructed the jury concerning intoxication and the specific intent required for a conviction of sexual assault in the third degree.

The facts relevant to the present appeal are as follows. After a jury trial, the defendant, Inde Faria, was convicted of one count each of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A),[2] attempted sexual assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-70 (a) (1),[3] and sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A).[4] The defendant thereafter pleaded guilty to part B of the information[5]

---

[2] General Statutes § 53a-92 (a) provides in relevant part: "A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually . . . ."

[3] General Statutes § 53a-49 provides in relevant part: "(a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. . . ."

General Statutes § 53a-70 provides in relevant part: "(a) A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

[4] General Statutes § 53a-72a provides in relevant part: "(a) A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person . . . ."

[5] Practice Book § 36-14 provides: "Where the information alleges, in addition to the principal offense charged, a former conviction or convictions, such information shall be in two separate parts, each signed by the prosecuting authority. In the first part, the particular offense with which the accused is charged shall be set out, and in the other part the former conviction or convictions shall be alleged. In alleging the former conviction, it is sufficient that the information allege the date when, the town or city where, and the court wherein such conviction was obtained and the crime of which the defendant was convicted, all of which may be stated in accordance with the provisions of Section 36-13."

charging that he was a persistent dangerous felony offender under § 53a-40 (a) (2) (A).[6] The trial court, *Parker, J.*, in lieu of sentencing the defendant on the kidnapping conviction, sentenced the defendant pursuant to § 53a-40 (f), to a total effective sentence of thirty-five years, execution suspended after twenty-five years, and five years probation. The trial court also sentenced the defendant to twenty years imprisonment on the conviction for attempted sexual assault in the first degree, and to five years imprisonment for the conviction on sexual assault in the third degree, both sentences to be served consecutive to each other and concurrently with the twenty-five year sentence. The defendant appealed his convictions to the Appellate Court, which reversed the convictions and ordered a new trial. *State* v. *Faria*, 47 Conn. App. 159, 703 A.2d 1149 (1997), cert. denied, 243 Conn. 965, 707 A.2d 1266 (1998).

At his second trial, the defendant was convicted of sexual assault in the third degree in violation of § 53a-

[6] General Statutes § 53a-40 (a) provides: "A persistent dangerous felony offender is a person who (1) stands convicted of manslaughter, arson, kidnapping, sexual assault in the first or third degree, aggravated sexual assault in the first degree, sexual assault in the third degree with a firearm, robbery in the first or second degree, or assault in the first degree, and (2) has been, prior to the commission of the present crime, convicted of and imprisoned under a sentence to a term of imprisonment of more than one year or of death, in this state or in any other state or in a federal correctional institution, for any of the following crimes: (A) The crimes enumerated in subdivision (1) of this subsection, murder, or an attempt to commit any of said crimes or murder; or (B) prior to October 1, 1975, any of the crimes enumerated in section 53a-72, 53a-75 or 53a-78 of the general statutes, revision of 1958, revised to 1975, or prior to October 1, 1971, in this state, assault with intent to kill under section 54-117, or any of the crimes enumerated in sections 53-9, 53-10, 53-11, 53-12 to 53-16, inclusive, 53-19, 53-21, 53-69, 53-78 to 53-80, inclusive, 53-82, 53-83, 53-86, 53-238 and 53-239 of the general statutes, revision of 1958, revised to 1968, or any predecessor statutes in this state, or an attempt to commit any of said crimes; or (C) in any other state, any crimes the essential elements of which are substantially the same as any of the crimes enumerated in subdivision (1) or (2) of this subsection."

72a (a) (1) (A), and was acquitted of the other charges.[7] The defendant then pleaded guilty to part B of the information charging him as a persistent dangerous felony offender. The trial court, *Koletsky, J.*, pursuant to § 53a-40 (f), in lieu of sentencing the defendant on his conviction of sexual assault in the third degree, sentenced him to a total effective term of imprisonment of twenty-five years, execution suspended after twenty years, and ten years probation. The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1[8] and General Statutes § 51-199 (c).[9] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In early 1995, the defendant lived with his girlfriend in an apartment building in New London. The victim lived in the same apartment building with her husband. The victim occasionally saw the defendant working on cars in the building's parking lot and would engage him in friendly conversation. In March, 1995, the defendant told the victim that he was moving out of the apartment building, and he gave her his pager number so that they could remain in touch.

On April 11, 1995, the victim paged the defendant because she wanted to see if he could repair a loose

[7] The jury found the defendant not guilty of kidnapping in the first degree and attempted sexual assault in the first degree.

[8] Practice Book § 65-1 provides: "When, pursuant to General Statutes § 51-199 (c), the supreme court (1) transfers to itself a cause in the appellate court, or (2) transfers a cause or a class of causes from itself to the appellate court, the appellate clerk shall notify all parties and the clerk of the trial court that the appeal has been transferred. A case so transferred shall be entered upon the docket of the court to which it has been transferred. There shall be no fee on such transfer. The appellate clerk may require the parties to take such steps as may be necessary to make the appeal conform to the rules of the court to which it has been transferred, for example, supply the court with additional copies of the record and the briefs."

[9] General Statutes § 51-199 provides in relevant part: "(c) The Supreme Court may transfer to itself a cause in the Appellate Court. . . . The court to which a cause is transferred has jurisdiction."

piece of molding on her car. The defendant called the victim and told her where to meet him. The victim met the defendant and then followed him to a house on Myrock Avenue, where the defendant was living at the time. The defendant unsuccessfully tried to repair the victim's car. The victim and the defendant then decided to go to a bar with the defendant's roommate, Todd Coons, and Coons' girlfriend. The four of them drank beer and socialized for a few hours. Then Coons drove his girlfriend home in her car. The victim and the defendant followed them in the victim's car, in order to give Coons a ride back to the bar. Along the way, the defendant tried to kiss the victim and touch her breast. She resisted his advances, pushed his hand away and told him no.

After dropping off Coons' girlfriend at her home, Coons, the defendant and the victim returned to the bar and continued drinking beer. Later, the three left in the victim's car. When they arrived at the defendant's residence on Myrock Avenue, Coons left the car, but the defendant remained inside. The defendant asked the victim to drive to the end of the street. She did so, and the defendant then asked her to stop the car. The victim put the car in neutral, but did not turn off the engine. Then the defendant put his hand behind the victim's head and tried to kiss her again. The victim pushed him away and said no. Then the defendant attempted to force the victim to engage in oral sex and to keep her in the car by pulling her by the hair. When the defendant relaxed his grip on the victim's hair, she was able to open the car door and leave the vehicle. The defendant grabbed at her hair and shirt, ripping her shirt as she ran away. The victim ran to the house and told Coons what had happened. Coons drove her home in her car, and the victim's husband called the police.

On appeal, the defendant claims that the trial court improperly: (1) imposed a more severe sentence after the second trial, and improperly failed to articulate the reasons for the sentence, as required under *North Carolina* v. *Pearce*, supra, 395 U.S. 726, and the constitution of Connecticut, article first, §§ 8 and 9;[10] and (2) instructed the jury concerning the defense of intoxication and the specific intent required to commit sexual assault in the third degree. We disagree.

## I

We first address the defendant's claim that the trial court imposed a more severe sentence after his second trial than was imposed after his first trial and, therefore, the second sentence was presumptively vindictive and violative of his due process rights under *North Carolina* v. *Pearce*, supra, 395 U.S. 711.

After both of the defendant's trials, the sentencing court sentenced the defendant as a persistent dangerous felony offender pursuant to § 53a-40 (f). That section provides in relevant part: "When any person has been found to be a persistent dangerous felony offender, and the court is of the opinion that his history and character and the nature and circumstances of his criminal conduct indicate that extended incarceration and lifetime supervision will best serve the public interest, the court, in lieu of imposing the sentence of imprisonment . . . for the crime of which such person presently stands convicted . . . shall sentence such person to a term of imprisonment of not more than forty years . . . ."

---

[10] Article first, § 8, of the constitution of Connecticut provides in relevant part: "No person shall be . . . deprived of life, liberty or property without due process of law . . . ."

Article first, § 9, of the constitution of Connecticut provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

Following the first trial, in lieu of sentencing the defendant for kidnapping in the first degree, the trial court sentenced him as a persistent dangerous felony offender to an effective sentence of thirty-five years, execution suspended after twenty-five years, and five years probation. Following the retrial, rather than sentencing the defendant for sexual assault in the third degree, the trial court sentenced him as a persistent dangerous felony offender to twenty-five years, execution suspended after twenty years, and ten years probation.

The defendant argues that his second sentence was more severe than the first sentence and, therefore, was presumptively vindictive under *Pearce.* He argues that, because he was acquitted after the second trial of kidnapping in the first degree and attempted sexual assault in the first degree, the second sentence is more severe than the first sentence in proportion to the charges of which he was convicted. The defendant further argues that his second sentence for the conviction of sexual assault in the third degree should not exceed his initial five year sentence for the conviction of that crime after the first trial. We disagree.

In *North Carolina* v. *Pearce,* supra, 395 U.S. 713, the defendant was convicted of assault with intent to commit rape and was sentenced by a trial judge to prison for a term of twelve to fifteen years. He successfully appealed the conviction. At retrial, he was convicted and sentenced to "an eight-year prison term, which, when added to the time [he] had already spent in prison . . . amounted to a longer total sentence than that originally imposed." Id. The defendant challenged the second sentence as a violation of the due process clause of the fourteenth amendment to the United States constitution. The United States Supreme Court agreed with him, concluding that "[d]ue process of law . . . requires that vindictiveness against a defendant

for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. . . . In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." Id., 725–26.

Under *Pearce* and its progeny, if, after successfully challenging his original conviction, the defendant receives a sentence that is more severe than the original sentence, the second sentence is presumptively vindictive. See *State* v. *Coleman*, 242 Conn. 523, 535–36, 700 A.2d 14 (1997), and cases cited therein.[11] "Initially then, before undertaking a *Pearce* analysis, we must determine whether the sentence imposed on remand was, in fact, greater than the sentence originally imposed. If it is not, application of the presumption of vindictiveness is not required." *State* v. *Carpenter*, 220 Conn. 169, 174, 595 A.2d 881 (1991), cert. denied, 502 U.S. 1034, 112 S. Ct. 877, 116 L. Ed. 2d 781 (1992); see also *United States* v. *Vontsteen*, 910 F.2d 187, 192 (5th Cir. 1990); *United States* v. *Bay*, 820 F.2d 1511, 1513–14 (9th Cir. 1987). "In determining whether the sentence was

---

[11] As we discussed in *Coleman*, however, since its ruling in *Pearce*, the United States Supreme Court has limited the applicability of the *Pearce* presumption in a variety of contexts. *State* v. *Coleman*, supra, 242 Conn. 535–38. Importantly, the court has "made clear that [*Pearce's*] presumption of vindictiveness do[es] not apply in every case where a convicted defendant receives a higher sentence on retrial." (Internal quotation marks omitted.) Id., 537–38, quoting *Alabama* v. *Smith*, 490 U.S. 794, 799, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989). "The court further explained that the application of the *Pearce* rule is limited 'to circumstances where its objectives are thought most efficaciously served, [namely] those [circumstances] in which there is a reasonable likelihood . . . that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority.' " *State* v. *Coleman*, supra, 538.

more severe, [i]t is the actual effect of the new sentence as a whole on the total amount of punishment lawfully imposed by [the judge] on the defendant . . . which is the relevant inquiry . . . . Further, [i]n determining whether the second sentence is harsher than the first, we look not at the technical length of the sentence but at its overall impact [on the defendant]." (Citation omitted; internal quotation marks omitted.) *State* v. *Carpenter*, supra, 174.

We conclude that the sentence imposed after the retrial of the defendant here was not more severe than the sentence imposed following the first trial, and, therefore, the presumption of vindictiveness under *Pearce* does not arise. The defendant, after both trials, pleaded guilty to being a persistent dangerous felony offender under § 53a-40 (a) (2) (A). After his first trial, the court sentenced the defendant as a persistent dangerous felony offender in lieu of sentencing him on the kidnapping charge. After the retrial, the trial court sentenced the defendant as a persistent dangerous felony offender in lieu of imposing a sentence on his conviction of sexual assault in the third degree.

Under the persistent dangerous felony offender statute, the sentencing court does not consider only the substantive offense for which the defendant was convicted. The very purpose of § 53a-40 (f) is to allow the sentencing court to impose a more severe sentence than would be allowed for the substantive offense. Section 53a-40 (f) requires the sentencing court to consider a defendant's "history and character and the nature and circumstances of his criminal conduct" and whether "extended incarceration and lifetime supervision will best serve the public interest . . . ."

Accordingly, the fact that the sentence imposed on the defendant pursuant to § 53a-40 (f) after his first trial was predicated on his conviction of kidnapping in the

first degree, while the second sentence was predicated on the conviction of sexual assault in the third degree, was not determinative. We conclude that there is no requirement that sentences imposed pursuant to § 53a-40 (f) strictly be proportional to the nature of the substantive offense or offenses of which the defendant was convicted. The nature of the substantive offense is only one factor to be considered by the sentencing court under § 53a-40 (f). That court could also consider, among other things, the defendant's prior convictions of two counts of sexual assault in the first degree and one count of attempted sexual assault in the first degree.

Moreover, we note that, in this case, the defendant received a less severe effective sentence under § 53a-40 (f) after his second trial than after his first trial. This indicates that the second sentencing court did, in fact, take into account the less serious nature of the substantive offense for which the defendant was convicted, as that was the only relevant sentencing consideration that had changed since the first sentencing. Accordingly, we reject the defendant's first argument that *Pearce* is implicated in this case.

We also conclude that there is no merit to the defendant's argument that the second sentencing court was limited to a sentence of five years imprisonment for the conviction of third degree sexual assault. There is no dispute that the defendant pleaded guilty to being a persistent dangerous felony offender in both proceedings, and that, therefore, he was eligible for enhanced sentencing under § 53a-40 (f) as a result of either conviction. We reject the suggestion that, because the first sentencing court had enhanced the sentence for the kidnapping conviction, but not the sentence for conviction of third degree sexual assault, for which it sentenced him to five years imprisonment, the second sentencing court was limited to the five year sentence

for that offense and was precluded from imposing a sentence pursuant to § 53a-40 (f).

We first note that sentencing the defendant as a persistent felony offender for his original conviction of third degree sexual assault would have been superfluous, in light of the sentence imposed under § 53a-40 (f) in lieu of the sentence for kidnapping. When the defendant was acquitted of the kidnapping charge after the second trial, however, it was not presumptively vindictive for the sentencing court to use the conviction for third degree sexual assault as a predicate for an enhanced sentence under § 53a-40 (f). See *United States* v. *Atehortva*, 69 F.3d 679, 685 (2d Cir. 1995),[12] cert. denied sub nom. *Correa* v. *United States*, 517 U.S. 1249, 116 S. Ct. 2510, 135 L. Ed. 2d 199 (1996) (when defendant was convicted of three counts after first trial, and sentencing court imposed enhanced sentence for count two under "grouping" sentencing guideline, and convictions of counts one and three were reversed, second sentencing court's imposition of identical sentence for count two based on other enhancement factors was not vindictive, because consideration of additional enhancement factors at first sentencing would have been superfluous); *Knapp* v. *Leonardo*, 46 F.3d 170, 180 (2d Cir.), cert. denied, 515 U.S. 1136, 115 S. Ct. 2566, 132 L. Ed. 2d 818 (1995) (sentence imposed pursuant to persistent felony offender statute after second trial resulting in conviction of manslaughter, that is identical to sentence imposed for conviction of second degree murder after first trial, is not presumptively vindictive, because sentence for second degree murder and as persistent felony offender would have been identical,

---

[12] "In deciding to adopt the analysis of the Second Circuit Court of Appeals, we recognize that the decisions of the federal circuit in which a state court is located are entitled to great weight in the interpretation of [the federal constitution]." (Internal quotation marks omitted.) *Schnabel* v. *Tyler*, 230 Conn. 735, 743 n.4, 646 A.2d 152 (1994).

and, therefore, sentencing defendant as persistent felony offender after first trial would have been superfluous).

Furthermore, limiting the sentencing court to a five year sentence for the third degree sexual assault conviction would ignore the purpose of § 53a-40 (f), which is "to punish those offenders who failed to reform after their previous convictions and opportunities to rehabilitate . . . ." *State* v. *Ledbetter*, 240 Conn. 317, 332, 692 A.2d 713 (1997). We therefore conclude that there is no presumption of vindictiveness under *Pearce* simply because the underlying offense for which the second sentencing court enhanced the sentence pursuant to § 53a-40 (f) was different from the offense for which the original court enhanced the sentence.

The defendant also argues that the second sentence was more severe because of a change in the parole statutes that became effective after the first sentence, but before the second sentence. Specifically, the defendant claims that, pursuant to General Statutes (Rev. to 1995) § 54-125a,[13] under his first sentence he would have been eligible for parole after serving 50 percent of his twenty-five year sentence, or twelve and one-half years. At the time of the second sentencing, however, § 54-125a had been amended by No. 95-255 of the 1995 Public Acts[14] so that, if the amendment applies to the defen-

[13] General Statutes (Rev. to 1995) § 54-125a provides in relevant part: "(a) A person convicted of one or more crimes who is incarcerated on or after October 1, 1990, who received a definite sentence or aggregate sentence of more than two years, and who has been confined under such sentence or sentences for not less than one-half of the aggregate sentence or one-half of the most recent sentence imposed by the court, whichever is greater, may be allowed to go at large on parole in the discretion of the panel of the Board of Parole for the institution in which the person is confined . . . ."

[14] Public Acts 1995, No. 95-255, § 1, provides in relevant part: "(2) A person convicted of an offense . . . where the underlying facts and circumstances of the offense involve the use, attempted use or threatened use of physical force against another person shall be ineligible for parole under . . . this section until such person has served not less than eighty-five per cent of the definite sentence imposed. . . ."

dant, he will not be eligible for parole until he has served 85 percent of his sentence, or seventeen years (85 percent of twenty years).[15]

The defendant has failed to cite any authority for his argument that *Pearce*'s presumption of vindictiveness applies to the operation of a parole eligibility statute that was amended after the original sentencing, and which is not within the terms of the sentence imposed. Moreover, the defendant has failed to establish that the changes made to § 54-125a by No. 95-255 of the 1995 Public Acts are, in fact, being applied to him. We conclude, therefore, that the record is insufficient for us to determine whether the change in the parole eligibility requirements actually will render the minimum time to be served under the second sentence longer than the minimum time that would have been served under the first sentence.[16] Therefore, we decline to address this claim.

The defendant also claims that the second sentence was more severe because it imposed ten years of probation while the first sentence imposed only five years of probation. The defendant argues that a longer period of probation, with its significant restrictions and burdens, especially for sex offenders, is, by itself, a more severe sentence. We reject this argument. Nothing in *Pearce* or in any of the other cases cited by the defendant supports such a proposition.[17] Rather, those cases con-

---

[15] The defendant, after the first sentence, could have been in prison for twelve and one-half years and on parole for five years for an effective minimum total of seventeen and one-half years. After the second sentence and the intervening change in parole eligibility, the defendant will spend a minimum of seventeen years in prison, followed by ten years of probation for an effective minimum total of twenty-seven years.

[16] We note that the defendant may seek habeas review of the application of the amended parole eligibility requirements to his sentence, thus rendering moot his argument under *Pearce*.

[17] The defendant cites the following cases for the proposition that the imposition of a longer period of probation, per se, constitutes a harsher sentence: *United States* v. *Williams*, 651 F.2d 644, 647 (9th Cir. 1981) (when practical effect of second sentence is to increase amount of time defendant

sistently equate a more severe sentence with either a longer term of imprisonment or a longer combined sentence. See, e.g., *North Carolina* v. *Pearce*, supra, 395 U.S. 719.

In the present case, the first sentence imposed an effective maximum of thirty-five years of imprisonment, plus five years of probation, for a total of forty years. The second sentence imposed an effective maximum of twenty-five years of imprisonment plus ten years of probation, for a total of thirty-five years. Both the period of imprisonment and the total sentence are shorter for the second sentence. We fail to see how the longer period of probation makes the second sentence more severe.

Accordingly, we reject all of the defendant's arguments that the sentence imposed after the second trial was more severe than the sentence imposed after the first trial. Therefore, we conclude that the presumption of vindictiveness under *Pearce* does not arise in this case.

The defendant, relying on *State* v. *Coleman*, supra, 242 Conn. 523, also argues that the constitution of Connecticut, article first, §§ 8 and 9, required the second sentencing court to articulate the reasons for the sentence imposed because there was a reasonable likelihood that the sentence would be perceived as vindictive. We conclude that *Coleman* is not applicable to the present case.

---

would have served in prison, second sentence is more severe); and *United States* v. *Markus*, 603 F.2d 409, 414 (2d Cir. 1979) (because second sentence had effect of increasing aggregate term of imprisonment, it was more severe). *United States* v. *Mathis*, 579 F.2d 415, 419 (7th Cir. 1978), and *United States* v. *Albanese*, 554 F.2d 543, 549 (2d Cir. 1977), also cited by the defendant, held that if the combined terms of imprisonment and probation in the second sentence are longer than the combined terms of the first sentence, then the second sentence is more severe. That is not the situation in this case.

In *Coleman*, we declined to decide the defendant's claim that the Connecticut constitution requires a sentencing court to articulate the reasons for a sentence that was imposed after a trial when that sentence is more severe than a prior sentence that was imposed after a guilty plea. In that case, we exercised our supervisory power to adopt the rule that "a trial court, upon a timely request by the defendant, should articulate its reasons for imposing a *greater sentence* after trial than previously had been imposed under the terms of a plea agreement." (Emphasis added.) *State* v. *Coleman*, supra, 242 Conn. 539. We have concluded in this case that the second sentence was not greater, and, therefore, the *Coleman* rule does not apply.

Finally, even if *Coleman* were to apply, the defendant's claim would fail in this case both because the second sentence was imposed by a different judge, who formulated the sentence before he had any knowledge of the first sentence, and because it was imposed under the same enhanced penalty provision as the first sentence. Therefore, we conclude that there is no reasonable basis to find that the sentence was vindictive or reasonably could be viewed as vindictive. See *Chaffin* v. *Stynchcombe*, 412 U.S. 17, 26–27, 93 S. Ct. 1977, 36 L. Ed. 2d 714 (1973) (presumption of vindictiveness does not arise when sentencing after second trial is by jury that, unlike judge who has been reversed, has no personal stake in prior conviction and is unaware of prior sentence); *United States* v. *Perez*, 904 F.2d 142, 146 (2d Cir.), cert. denied, 498 U.S. 905, 111 S. Ct. 270, 112 L. Ed. 2d 226 (1990), cert. denied sub nom. *Garcia* v. *United States*, 498 U.S. 1124, 111 S. Ct. 1085, 112 L. Ed. 2d 1189 (1991) (when second sentence is imposed by different judge "there can be no inference of a specific retaliatory motive" and presumption of vindictiveness does not apply). Accordingly, under the Connecticut constitution, the second sentencing court

was not required to articulate the reasons for the sentence.

We note, however, that the second sentencing court did in fact articulate the reasons for the sentence it imposed under § 53a-40 (f). The court stated at the sentencing hearing that "[the court has] a person in front of [it] who on four separate occasions engaged in violent sexual conduct with a woman of smaller stature than the defendant. The violence of some of the earlier crimes is truly extraordinary." The court then reviewed the defendant's extensive criminal record, and concluded that "[i]t is a very, very serious situation, an indication of the danger to society. And it seems obvious, that in the words of the statute, that the history and character of [the defendant's] criminal record and the nature and circumstances of that criminal record indicate that extended incarceration, and indeed, lifetime supervision, is cried out for, or in the statutory language will serve the needs of the public." The court went on to explain that it was "using a sentence enhancement provision of our statutes which permit [the court] when [the defendant is] convicted of a serious sexual assault . . . to take a look at [the defendant's] whole criminal history, to take a look at the whole pattern of [the defendant's] criminal conduct and the nature and circumstances of each and every one of the priors as well as this [conviction] . . . and then make a decision as to whether it's appropriate to use that sentence enhancement provision. . . . [The defendant entered a] guilty plea [to the part B information alleging that he is a persistent offender], for which [he is] getting considerable credit . . . . [The court may] always look at prior records. But [because of the guilty plea, the court in this case is] mandated to . . . take a look at the whole thing and see what [it sees] and call it as [it sees] it." The court concluded that "[t]his is an offense that as a fourth time loser, [the defendant]

could be looking at a 30 year sentence here. . . . [The court is] not sentencing [the defendant] as a person with no rehabilitation chance at all. That would be a considerably more severe sentence. What [the court is] sentencing [the defendant as], though, is as a person who is dangerous to society. . . . [F]rom 1984 to 1998 . . . a year didn't go by [when the defendant was] on the street that [he] didn't sexually assault a female." The court then imposed the sentence, stating that "it is [the court's] sentence that on the offense of sexual assault in the third degree as enhanced by the persistent dangerous felony offender statute, [the defendant is] committed to the custody of the commissioner of correction for a period of time of twenty-five years, execution of that sentence suspended after . . . twenty years."

We conclude that the trial court properly imposed the sentence in this case.

II

The defendant also claims that the trial court improperly instructed the jury concerning intoxication and the specific intent required for a conviction of sexual assault in the third degree. The defendant argues that the trial court's instructions were improper in two respects. The defendant claims that the trial court failed to instruct the jury that (1) intoxication could negate the specific intent required to commit sexual assault in the third degree; and (2) "intoxication did not have to rise to the level that it negated [the] defendant's general intent to be considered but would constitute a defense if it negated his specific intent." The defendant argues that the trial court's instructions to the jury improperly lowered the state's burden of proof, thereby depriving him of due process under the fifth amendment

to the United States constitution[18] and the constitution of Connecticut, article first, § 8.[19] We disagree.

"To preserve a challenge to the jury charge, the defendant must make a written request to charge, or take exception to the jury instructions when they are given by the trial court. . . . This court is not bound to review claims of instructional error if the party raising the claim neither submitted a written request to charge, nor excepted to the charge given by the trial court. Practice Book § 852 [now § 42-16]. The purpose of [§ 42-16] is to alert the court to any claims of error while there is still an opportunity for correction in order to avoid the economic waste and increased court congestion caused by unnecessary retrials." (Internal quotation marks omitted.) *State* v. *Adorno*, 45 Conn. App. 187, 196–97, 695 A.2d 6, cert. denied, 242 Conn. 904, 697 A.2d 688 (1997).

Although the defendant submitted proposed jury instructions, the defendant's request to charge did not refer to the charge of sexual assault in the third degree, the specific intent required for that crime, or how intoxication may negate the specific intent to commit sexual assault in the third degree.[20] Furthermore, the defendant

[18] The fifth amendment to the United States constitution provides in relevant part: "No person shall be . . . deprived of life, liberty, or property, without due process of law . . . ."

[19] See footnote 10 of this opinion.

[20] The defendant's request to charge stated in relevant part:

"I INTOXICATION

"There has been some testimony to the effect that [the defendant] was under the influence of an intoxicant, namely, alcohol, at the time of the alleged acts. The Penal Code defines intoxication as a substantial disturbance of mental or physical capacities resulting from the introduction of substances into the body.

"If you find that [the defendant] was under the influence of an intoxicant at the time of the alleged acts, you must then determine what effect, if any, this voluntary intoxication had on his ability to form the specific intent required to commit the alleged crimes. [General Statutes] § 53a-7 states: 'Intoxication shall not be a defense to a criminal charge, but in any prosecution for an offense, evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negate an element of the crime

did not take exception to the instructions concerning intoxication and the specific intent required for a conviction of sexual assault in the third degree.[21] The defendant, therefore, did not preserve the present claim for review. The defendant argues, however, that his claims meet the criteria for our review of unpreserved constitutional claims as provided in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[22]

charged.' Such evidence was offered in this case through examination and cross-examination of the State's witnesses.

"Note that intoxication is not a defense to or an excuse for the commission of a crime. It is relevant to negate an element of the crime charged, such as intent. If you find that the defendant was intoxicated at the time of the crime, you may take this fact into consideration in determining whether he was in such a state of intoxication as to be incapable of forming the required specific intent, *which is a necessary element for the commission of the crimes of Kidnapping in the First Degree and Attempt to Commit Sexual Assault in the First Degree.*

"I charge you further that if you believe that the defendant, although intoxicated, was still capable of possessing a specific criminal intent, then his responsibility is the same as if he were not intoxicated. You must first decide whether the defendant was intoxicated at the time of the alleged crime; and second whether he was incapable of possessing an *intent to commit the acts constituting the crimes of Kidnapping in the First Degree and Attempt to Commit Sexual Assault in the First Degree.* Remember, the defendant does not have to prove that he was intoxicated. The state always has the burden of proving beyond a reasonable doubt that the defendant was capable of forming the required intent. Any degree of intoxication, not merely total intoxication, may be considered in determining whether the defendant possessed the requisite intent. [Connecticut Selected Jury Instructions: Criminal (3d Ed. 1995) § 2.35.]" (Emphasis added.)

[21] The transcript from trial, dated May 14, 1998, provides:

"The Court: Exceptions to the charge from the state?

"[Assistant State's Attorney]: None, Your Honor.

"The Court: From the defense?

"[Defense Counsel]: Just to reiterate in my exception to giving the lesser included offense of kidnapping in the second.

"The Court: Anything else?

"[Defense Counsel]: No, Your Honor."

[22] In *State* v. *Golding*, supra, 231 Conn. 239–40, we held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional

We conclude that the record is adequate for our review and that the defendant has raised a constitutional claim. *State* v. *Edwards*, 247 Conn. 318, 327, 721 A.2d 519 (1998). We conclude, however, that the defendant's claim fails under the third prong of *Golding*.

"It is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Citations omitted; internal quotation marks omitted.) *State* v. *Dyson*, 217 Conn. 498, 501, 586 A.2d 610 (1991); see *State* v. *Faust*, 237 Conn. 454, 473–74, 678 A.2d 910 (1996). "As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Denby*, 235 Conn. 477, 485, 668 A.2d 682 (1995).

The trial court provided the jury with a comprehensive explanation of the relationship between the state's burden of proving the element of specific intent and the defendant's intoxication. The trial court prefaced its instruction on intoxication with a reminder to the

violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." "The first two requirements involve a determination of whether the claim is reviewable; the second two requirements involve a determination of whether the defendant may prevail." *State* v. *Woods*, 250 Conn. 807, 815, 740 A.2d 371 (1999).

jury that the defendant had presented testimony tending to prove that he was intoxicated at the time of the crime. The court then stated the statutory explanation of the defense of intoxication. The court referred to the relevance of evidence of intoxication in a prosecution for a specific intent offense: "[I]ntoxication is not a defense to a criminal charge, but in any prosecution for an offense evidence of the defendant's intoxication may be offered by the defendant wherever it's relevant to negate an element of the crime charged." Thereafter, the trial court defined intoxication in accordance with General Statutes § 53a-7.[23] The trial court next distinguished the level of intoxication necessary to constitute "driving under the influence of alcohol," and intoxication as it relates to intent. The court continued: "So as applied here, it means that if you find that the defendant was so intoxicated that he was not mentally able, even to form the intent to commit the crime, then the intent element of the crime charged would not be proven and you would be required to acquit the defendant of that charge, assuming that the particular charge has an intent element to it. This does not mean, however, that the defendant has the burden of proving that he was too intoxicated to form the intent required as an element of the crime. The state retains that burden of proof, and that's proof beyond a reasonable doubt on the issue of intent, as all other elements of each of the crimes you'll be considering. . . . You must, if you are to find for the defendant on this issue, find that while he was committing the crime that you're deliberating, the acts, say claims of the crimes, kidnap *or sexual assault*, that at that time, if you find the fact proven that he was committing those acts, that at that time he was so intoxicated that his mind was incapable of forming the intent

---

[23] General Statutes § 53a-7 provides in relevant part: "As used in this section, 'intoxication' means a substantial disturbance of mental or physical capacities resulting from the introduction of substances into the body."

to do so, it's only if you find that [the defendant's] intoxication was to this degree and with this result that you should consider it." (Emphasis added.) The trial court then concluded its instructions regarding intoxication, stating: "Whether or not the defendant was so intoxicated that he could not and did not form the required intent is a question of fact for you to determine, and where the facts are concerned, you're the judges."

The trial court, rather than using the words "specific intent" when instructing the jury as to sexual assault in the third degree, referred to specific intent as part of the first element of sexual assault in the third degree: "The first element is compelling another person to submit to sexual contact. Now sexual contact in this statute means any contact with the intimate parts of a person *for the purpose of sexual gratification of the accused.*"[24] (Emphasis added.) After defining "intimate parts," the trial court continued: "[T]he touching of the other person's intimate parts . . . must have been for the sexual gratification of the accused. In determining whether or not the sexual touching was for the sexual gratification of the accused, you may consider the accused's conduct, including any statements made by him and the circumstances surrounding that conduct and draw any reasonable and logical inferences from that conduct and those circumstances."

We conclude that these instructions, coupled with the trial court's general instructions on intent and the state's burden of proof, adequately apprised the jury of the specific intent necessary for the conviction of sexual assault in the third degree, and the state's burden to prove, beyond a reasonable doubt, that the defendant had that intent despite evidence of his intoxication at

[24] The specific intent for sexual assault in the third degree is derived from General Statutes § 53a-65 (3), which provides in relevant part: " 'Sexual contact' means any contact with the intimate parts of a person . . . for the purpose of sexual gratification of the actor . . . ."

the time the crime occurred. The combined effect of these instructions was not only substantially equivalent to the charge requested by the defendant; see *State* v. *Butler*, 207 Conn. 619, 635, 543 A.2d 270 (1988); but the instructions were more comprehensive than the defendant's request to charge.

Accordingly, we conclude that there was no reasonable possibility that the jury misunderstood the trial court's instructions regarding the specific intent necessary to convict the defendant of sexual assault in the third degree, or that intoxication may negate that intent. We conclude that the trial court's instructions could not have misled the jury and that, therefore, the instructions were constitutionally adequate.

The judgment is affirmed.

In this opinion the other justices concurred.