## STATE OF CONNECTICUT *v.* MICHAEL PERSON
## (AC 20189)

Lavery, C. J., and Foti and Landau, Js.

---

Argued September 14—officially released November 28, 2000

*Lisa J. Steele*, special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, was *Michael Dearington*, state's attorney, for the appellee (state).

*Opinion*

LAVERY, C. J. The defendant, Michael Person, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a[1] and criminal trespass in the first degree in violation of General Statutes (Rev. to 1991) § 53a-107

---

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

(a) (2).[2] On appeal, the defendant claims that the trial court (1) improperly instructed the jury on the affirmative defense of extreme emotional disturbance, thereby creating the reasonable possibility that the jury was misled, and (2) abused its discretion by failing to order an examination of him pursuant to General Statutes (Rev. to 1991) § 17a-566.[3] We affirm the judgment of the trial court.

The relevant facts pertaining to the defendant's arrest were set out by our Supreme Court in *State* v. *Person*, 236 Conn. 342, 673 A.2d 463 (1996).[4] "The defendant and [the victim, Leshea Pouncey] had been romantically involved and had planned to marry. Pouncey, however, terminated their engagement, after which she commenced a relationship with Donald Moody. The defendant testified that on May 19, 1991, he had forcefully entered Pouncey's apartment while she was away in order to recover his personal belongings. While the defendant was in the rear bedroom gathering his possessions, Pouncey returned home with her child. The defendant further testified that after speaking on the telephone, Pouncey had confronted him in the bedroom with a can of Mace in one hand and two knives in

---

[2] General Statutes (Rev. to 1991) § 53a-107 (a) provides in relevant part: "A person is guilty of criminal trespass in the first degree when . . . (2) such person enters or remains in a building or any other premises in violation of a restraining order issued by the superior court."

[3] General Statutes (Rev. to 1991) § 17a-566 (a) provides in relevant part: "Except as provided in section 17a-574 any court prior to sentencing a person convicted of an offense for which the penalty may be imprisonment in the Connecticut Correctional Institution at Somers . . . may if it appears to the court that such person is mentally ill and dangerous to himself or others, upon its own motion or upon request of any of the persons enumerated in subsection (b) of this section and a subsequent finding that such a request is justified, order the commissioner to conduct an examination of the convicted defendant by qualified personnel of the institute."

[4] The trial that led to this appeal resulted from the Supreme Court's reversal of the judgment of conviction on the same charges in *State* v. *Person*, supra, 236 Conn. 342.

the other. According to the defendant, Pouncey had instigated a struggle by spraying Mace in his eyes. In the course of the struggle, the defendant stabbed Pouncey. The defendant then fled the apartment and later surrendered himself at the New Haven police station." Id., 346. The defendant confessed to killing the victim. At trial, the defendant asserted the affirmative defense of extreme emotional disturbance pursuant to § 53a-54a.

I

The defendant first claims that the court improperly instructed the jury on the affirmative defense of extreme emotional disturbance because it failed to explain that when considering the defendant's "situation," the jury should take into account testimony regarding his mental illness. We disagree.

A

As a preliminary matter, we address the state's assertion that we should decline to review this claim because it was not properly preserved for appeal. "To preserve a challenge to the jury charge, the defendant must make a written request to charge, or take exception to the jury instructions when they are given by the trial court. . . . This court is not bound to review claims of instructional error if the party raising the claim neither submitted a written request to charge, nor excepted to the charge given by the trial court. Practice Book § 852 [now § 42-16]. The purpose of [Practice Book § 42-16] is to alert the court to any claims of error while there is still an opportunity for correction in order to avoid the economic waste and increased court congestion caused by unnecessary retrials." (Internal quotation marks omitted.) State v. Faria, 254 Conn. 613, 632, 758 A.2d 348 (2000).

Although the defendant submitted proposed jury instructions, his proposal did not contain a request to

elucidate the word "situation." The defendant requested that the court emphasize the testimony regarding his mental state to underscore the subjective element of the affirmative defense of extreme emotional disturbance.[5] As a result, the defendant's exception did not specifically refer to an explanation of the term "situation." Nevertheless, the court has "an obligation to do

[5] The defendant's proposed preliminary jury instructions read in part as follows:

"The reasonableness of that explanation or excuse, however, must be determined from Michael Person's viewpoint of the situation, under the circumstances as he believed them to be and keeping in mind his diminished mental capacity should you find that to have been established by the evidence. You must not look at the defendant's situation from your viewpoint. Rather, you must examine the totality of the circumstances from the defendant's viewpoint and then you must determine whether the defendant's explanation or excuse for his extreme emotional disturbance was reasonable under those circumstances."

The defendant's proposed final jury instructions read as follows:

"This affirmative defense relates to Michael Person's state of mind at the time he caused Leshea Pouncey's death. You will recall that one of the elements of the crime of murder is that the person intended to cause the death of another. Extreme emotional disturbance does not negate, does not wipe out, that intent. Rather, it serves to explain the circumstances leading to the formation of that intent. Its purpose is to permit the defendant to show that his actions were caused by a mental infirmity not rising to the level of insanity, and that he is less culpable, less blameworthy because his intentional acts were caused by extreme emotional disturbance. . . .

"Third, that he had an extreme emotional reaction to that stress as a result of which there was a loss of self-control, and his reason was overborne by intense feelings, such as passion, anger, distress, grief, excessive agitation or similar emotions.

"You should give consideration to whether the intensity of these feelings was such that the defendant's usual intellectual controls failed and that his normal rational thinking no longer prevailed at the time of the act. Thus, it is your responsibility as jurors to determine, from Michael Person's point of view, to what extent, if any, his emotions governed his conduct at the time of the death of Leshea Pouncey. . . .

"If you find that the state has established beyond a reasonable doubt that Michael Person intentionally caused the death of Leshea Pouncey and further that Michael Person has established by a preponderance of the evidence that he was acting under the influence of an extreme emotional disturbance for which, under the totality of the circumstances as Michael Person believed them to be, there is a reasonable explanation or excuse, your verdict should be guilty of manslaughter in the first degree. . . ."

justice and to be vigilant and vigorous in protecting individuals." *State* v. *Sirimanochanh*, 224 Conn. 656, 665, 620 A.2d 761 (1993). Indeed, although this court is not bound to do so, it will review the defendant's claim despite his technical noncompliance with the rules of practice.[6] See *State* v. *Williams*, 59 Conn. App. 771, 781, 758 A.2d 400 (2000). The requirement that a party distinctly state the matter to which it objects serves the purpose of alerting the court to any claims of error while there is still an opportunity for correction. *State* v. *Deptula*, 31 Conn. App. 140, 146, 623 A.2d 525 (1993), appeal dismissed, 228 Conn. 852, 635 A.2d 812 (1994). The defendant's "situation" and mental state raise an issue that falls within the subjective-objective portion of the affirmative defense of extreme emotional disturbance. Thus, although the defendant's exception[7] could have been more specific, it put the court on sufficient notice that the instructions might contain deficiencies and thereby satisfies the purpose of Practice Book § 42-16. We conclude, therefore, that the defendant properly preserved the present claim for review.

B

Our Supreme Court's standard of review regarding claims of improper jury instruction is well established. "[A] charge to the jury is not to be critically dissected

---

[6] Practice Book § 42-16 provides: "An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of exception. The exception shall be taken out of the hearing of the jury."

[7] Counsel stated the following exception: "I have just one [exception], Your Honor, that we mentioned, I think, in chambers, about this reasonable explanation or excuse, and that a reasonable person, [*State* v. *Raguseo*, 225 Conn. 114, 622 A.2d 519 (1993)]. All right. And not including in whether there was a reasonable explanation or excuse from the defendant's viewpoint as taken into consideration his diminished mental capacity; other than that exception, I have no others."

for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Faria*, supra, 254 Conn. 634. "As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) Id.

Here, the defendant claims that the charge, viewed as a whole, may have misled the jury in analyzing the defendant's affirmative defense of extreme emotional disturbance.[8] We disagree.

[8] The court instructed the jury on extreme emotional disturbance in relevant part as follows:

"Now, what is meant by extreme emotional disturbance? Extreme emotional disturbance is the emotional state of an individual who is exposed to extremely unusual and overwhelming stress and has an extreme emotional reaction to it as a result of which there is a loss of self-control and reason is overborne by intense feelings such as passion, anger, distress, grief or other similar emotions. Extreme emotional disturbance is composed of three elements which must be proved by the defendant by the preponderance of the evidence.

"First, that at the time the defendant intentionally caused the death of Leshea Pouncey, he acted under the influence of an emotional disturbance.

"And, second, that such emotional disturbance was extreme.

"And, third, that under all of the circumstances as the defendant believed them to be, there was a reasonable explanation or excuse for such extreme emotional disturbance influencing his conduct. It is for you to decide to what extent, if any, the defendant's emotions did govern his conduct at the time he intentionally caused the death of Leshea Pouncey.

"In reaching that decision, you may consider all of the emotion which you find, in fact influenced the defendant's conduct. For example, passion, anger, distress, grief, resentment, fright, hatred or other emotions.

"While the emotional disturbance need not necessarily have been a spontaneous or sudden occurrence and, indeed, may have simmered in the defen-

The court provided the jury with comprehensive instructions regarding the affirmative defense of extreme emotional disturbance. The defendant submitted preliminary and final requests to charge.[9] In the proposed charges, the defendant requested that the court instruct the jury that it should consider the defendant's mental illness as part of the reasonable explanation or excuse for his extreme emotional disturbance. That is not required under *State* v. *Ortiz*, 217 Conn. 648, 588 A.2d 127 (1991), or *State* v. *Raguseo*, 225 Conn. 114, 622 A.2d 519 (1993). In those cases, in which the defendants presented evidence of mental illness, our Supreme Court held that jury instructions, precisely like the ones here, properly explained the law.

We conclude, therefore, that despite the court's rejection of the defendant's proposed charges, the instructions that the court gave accurately explained the law, and it was not reasonably possible that the charge, when considered as a whole, misled the jury. Although the word "situation" may not usually mean mental illness, "[j]ury instructions must be read as a whole and . . . are not to be judged in artificial isolation from the overall charge. . . . [A]n error in the [charge] requires reversal only if, in the context of the whole instruction, there is a reasonable possibility that the jury was misled in reaching its verdict." (Citation omitted; internal quotation marks omitted.) *State* v. *Sanders*, 54 Conn. App.

dant's mind for a long period of time, the disturbance must actually have influenced his conduct at the time of the killing. . . .

"If you find the defendant acted under the influence of emotional disturbance and that it was extreme, you must then consider whether there is a reasonable explanation or excuse for such disturbance.

"In determining the reasonableness of a defendant's excuse, you must measure the reasonableness from the viewpoint of a reasonable person in the defendant's situation under the circumstances as the defendant believed them to be. That is, from the viewpoint of a person of ordinary intellect and faculties under the circumstances as the defendant believed them to be."

[9] See footnote 5.

732, 740, 738 A.2d 674, cert. denied, 251 Conn. 913, 739 A.2d 1250 (1999).

Indeed, although the defense raises a novel argument, we respectfully disagree with the assertion that the term "situation," without further elucidation, might have misled the jury into thinking that it could not consider the evidence of the defendant's mental state. In *State* v. *Elliott*, 177 Conn. 1, 4–5, 411 A.2d 3 (1979), the seminal case on the affirmative defense of extreme emotional disturbance, our Supreme Court found the language of our murder statute to be identical to that of New York Penal Law § 125.25 (1) (a). We agree with the following language in *People* v. *Casassa*, 49 N.Y.2d 668, 680, 404 N.E.2d 1310, 427 N.Y.S.2d 769, cert. denied, 449 U.S. 842, 101 S. Ct. 122, 66 L. Ed. 2d 50 (1980): "[W]e believe that what the Legislature intended in enacting the statute was to allow the finder of fact the discretionary power to mitigate the penalty when presented with a situation which, under the circumstances, appears to them to have caused an understandable weakness in one of their fellows. Perhaps the chief virtue of the statute is that it allows such discretion without engaging in a detailed explanation of individual circumstances in which the statute would apply, thus avoiding the 'mystifying cloud of words' which Mr. Justice Cardozo abhorred."

"Situation," as it is used in this case, is not a term of limitation, but a term that allows all of the facts brought forth to be considered. Because the court properly instructed the jury as to the affirmative defense of extreme emotional disturbance and the jury concluded that the defendant was guilty of murder, we find no basis for reversal of the judgment on the ground that the court did not give a jury instruction that explained the word "situation."

Accordingly, we conclude that there was no reasonable possibility that the jury misunderstood the court's

instructions regarding the affirmative defense of extreme emotional disturbance and, therefore, those instructions could not have misled the jury.

## II

The defendant next claims that the court improperly failed to order an examination of him pursuant to § 17a-566. It is well settled that "[t]his court will not review issues of law that are raised for the first time on appeal." (Internal quotation marks omitted.) *State* v. *Morales,* 33 Conn. App. 184, 190, 634 A.2d 1193 (1993), rev'd on other grounds, 232 Conn. 707, 657 A.2d 585 (1995). This court has repeatedly held that it "will not consider claimed errors on the part of the trial court unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim." (Internal quotation marks omitted.) *Biggs* v. *Warden,* 26 Conn. App. 52, 57, 597 A.2d 839, cert. denied, 221 Conn. 902, 600 A.2d 1029 (1991).

In *State* v. *Cummings,* 46 Conn. App. 661, 682–84, 701 A.2d 663, cert. denied, 243 Conn. 940, 702 A.2d 645 (1997), this court specifically held that the defendant's failure to initiate action seeking a presentence psychiatric examination precluded review of the claim on appeal. Moreover, the defendant has not asked for review pursuant to *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine.[10] Practice Book § 60-5. We decline, therefore, to review this claim, as the defendant has failed to invoke a principle that entitles him to review.

The judgment is affirmed.

In this opinion the other judges concurred.

[10] As pointed out by the state, although the defendant has not requested review under *State* v. *Golding,* supra, 213 Conn. 239–40, the claim is not reviewable under that case because it is a statutory claim rather than a constitutional one. See *State* v. *Gates,* 198 Conn. 397, 401–402, 503 A.2d 163 (1986).