## STATE OF CONNECTICUT *v.* SIDNEY WADE
## (SC 18510)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.*

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued March 22—officially released July 6, 2010

*Pamela S. Nagy*, special public defender, for the appellant (defendant).

*Robert J. Scheinblum*, senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Paul N. Rotiroti*, senior assistant state's attorney, for the appellee (state).

*Opinion*

NORCOTT, J. This appeal requires us to consider the applicability and constitutionality of the "aggregate

package" theory of sentencing (aggregate package theory) to the resentencing of a defendant after the partial reversal of a multicount conviction on the basis of insufficient evidence. The defendant, Sidney Wade, appeals[1] from the judgment of the trial court resentencing him to a total effective sentence of twenty-three years imprisonment, on remand from the judgment of the Appellate Court, which had reversed, in part, his conviction of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3), and modified the judgment of conviction to manslaughter in the second degree in violation of General Statutes § 53a-56 (a) (1). *State* v. *Wade*, 106 Conn. App. 467, 492–93, 942 A.2d 1085, cert. granted, 287 Conn. 908, 950 A.2d 1286 (2008) (appeal withdrawn June 12, 2008). On appeal, the defendant claims that: (1) the trial court improperly resentenced him on all of his convictions because the Appellate Court's order directed resentencing only on the reversed count; (2) the aggregate package theory, adopted by this court in *State* v. *Miranda*, 260 Conn. 93, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002), does not apply when the reversal of a conviction is based on insufficient evidence; (3) under *North Carolina* v. *Pearce*, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), the trial court's decision to increase the sentences on the affirmed counts violated the defendant's due process rights under the fourteenth amendment to the United States constitution[2] and, alternatively, article first, § 8, of the Connecticut constitution;[3] and (4) we should

---

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] The fourteenth amendment to the United States constitution, § 1, provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

[3] Article first, § 8, of the constitution of Connecticut provides in relevant part: "No person shall . . . be deprived of life, liberty or property without due process of law . . . ."

vacate his sentences under our supervisory powers over the administration of justice. We disagree and, therefore, we affirm the judgment of the trial court.

In connection with the death of the victim, Rebecca J. Calverley, from a drug overdose,[4] the state charged the defendant with two counts of sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), two counts of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of § 21a-278 (b), one count of manslaughter in the first degree in violation of § 53a-55 (a) (3) and one count of manslaughter in the second degree in violation of § 53a-56 (a) (1). The case was tried to the jury, which found the defendant guilty of two counts each of sale of narcotics by a person who is not drug-dependent and possession of narcotics with intent to sell by a person who is not drug-dependent, and one count of manslaughter in the first degree.[5] The trial court rendered a judgment of conviction in accordance with the jury's verdict and sentenced the defendant to a total effective sentence of twenty-five years imprisonment, structured as follows: the court imposed concurrent seven year terms of incarceration, with a five year mandatory minimum, on each of the four narcotics convictions and ordered that they be served consecutively to an eighteen year term of incarceration on the first degree manslaughter conviction.

The defendant appealed from the judgment of conviction to the Appellate Court, which reversed the judgment in part, concluding that there was insufficient evidence to support the jury's finding that he was guilty of manslaughter in the first degree in violation of § 53a-

[4] For a detailed recitation of the factual basis for the defendant's convictions, see *State* v. *Wade*, supra, 106 Conn. App. 469–75.

[5] Thereafter, the state entered a nolle prosequi as to the charge of manslaughter in the second degree.

55 (a) (3), but also that the evidence was sufficient to sustain a conviction of manslaughter in the second degree in violation of § 53a-56 (a) (1) because the evidence established that the defendant "was aware of and consciously disregarded the substantial and unjustifiable risk of illegally distributing prescription medication and therefore acted recklessly." *State* v. *Wade,* supra, 106 Conn. App. 490. The Appellate Court, therefore, remanded the case to the trial court "with direction to modify the judgment to reflect a conviction of manslaughter in the second degree in violation of § 53a-56 (a) (1) and to resentence the defendant in accordance with that conviction." Id., 493.

On remand, following a resentencing hearing, the trial court vacated the sentences on all counts in the judgment and modified the judgment to reflect a conviction of manslaughter in the second degree, along with the four original narcotics convictions that the Appellate Court had affirmed. The trial court then imposed a new total effective sentence of twenty-three years imprisonment by restructuring the defendant's original sentence as follows: the court increased the defendant's concurrent terms of imprisonment on the narcotics counts from seven years to thirteen years and ordered that they be served consecutively to a ten year term of imprisonment for the manslaughter in the second degree conviction. This appeal followed. See footnote 1 of this opinion.

On appeal, the defendant claims that: (1) the aggregate package theory does not apply in the present case, wherein the reversal of a conviction was based on insufficient evidence; (2) the trial court improperly resentenced him on all of his convictions when the Appellate Court's rescript ordered the court to resentence him only on the manslaughter conviction; (3) the trial court's increase of the sentences on the counts that were affirmed was vindictive, violating both his federal and

state due process rights; and (4) in the alternative, his sentences should be vacated under our supervisory powers. We address each claim in turn.

I

We ordinarily would begin with the defendant's claim that the trial court improperly resentenced him on all of his convictions when the Appellate Court had directed that court to resentence him only on the manslaughter conviction. This claim, which requires interpreting the Appellate Court's rescript in *State* v. *Wade*, supra, 106 Conn. App. 467, cannot, however, be decided properly without first resolving the underlying legal issue, namely, the defendant's claim that the aggregate package theory does not apply to this case, wherein the partial reversal of a conviction was based on insufficient evidence, rather than on an illegal sentence or violations of the constitutional prohibitions against double jeopardy. In response, the state contends that the trial court complied with the Appellate Court's mandate when it vacated the defendant's multicount conviction in its entirety and restructured it in accordance with its original sentencing intent because, in *State* v. *Miranda*, supra, 260 Conn. 93, we adopted the aggregate package theory without restriction as to the underlying reason for remand for resentencing.

As a preliminary matter, we set forth the applicable standard of review and governing principles. Under the aggregate package theory, when a multicount conviction is remanded after one or more of the convictions have been vacated on appeal, the trial court may increase individual sentences on the surviving counts as long as the total effective sentence is not exceeded. See, e.g., *Pennsylvania* v. *Goldhammer*, 474 U.S. 28, 30, 106 S. Ct. 353, 88 L. Ed. 2d 183 (1985) (per curiam); *United States* v. *Dominguez*, 951 F.2d 412, 414 (1st Cir. 1991), cert. denied sub nom. *Maravilla* v. *United States*,

504 U.S. 917, 112 S. Ct. 1960, 118 L. Ed. 2d 562 (1992). On appeal, "[t]he determination of whether the defendant's new sentence exceeds his original sentence is a question of law over which . . . review is plenary." *State* v. *Tabone*, 292 Conn. 417, 428, 973 A.2d 74 (2009).

In *State* v. *Raucci*, 21 Conn. App. 557, 563, 575 A.2d 234, cert. denied, 215 Conn. 817, 576 A.2d 546 (1990), the Appellate Court adopted the aggregate package theory, which authorizes trial courts, following either a remand from a direct appeal or after the correction of an illegal sentence pursuant to Practice Book § 935, now § 43-22,[6] to fashion a new sentence to implement its original sentencing intent. In *Raucci*, the defendant had been convicted of larceny in the first degree, conspiracy to commit larceny in the first degree, burglary in the third degree and conspiracy to commit burglary in the third degree, and was sentenced to a total effective sentence of not less than fifteen nor more than thirty years imprisonment. Id., 558. On appeal, the Appellate Court vacated the conviction of conspiracy to commit burglary in the third degree on the ground that that conviction had stemmed from the same agreement underlying his conviction of conspiracy to commit larceny and, therefore, violated the prohibition against double jeopardy. Id., 559. After remand, the trial court resentenced the defendant on the three remaining counts so as to reflect its original sentencing intent, and reimposed a total effective sentence of not less than fifteen nor more than thirty years. Id.

In accordance with the great weight of federal precedent, the Appellate Court adopted the aggregate package theory and affirmed the defendant's new sentence, recognizing that, "[t]he general rationale for this is that

---

[6] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

the defendant, in appealing his conviction and punishment, has voluntarily called into play the validity of the entire sentencing package, and, thus, the proper remedy is to vacate it in its entirety. More significantly, the original sentencing court is viewed as having imposed individual sentences merely as component parts or building blocks of a larger total punishment for the aggregate convictions, and, thus, to invalidate any part of that package without allowing the court thereafter to review and revise the remaining valid convictions would frustrate the court's sentencing intent." Id., 562. The court also noted that a trial court's power to restructure the aggregate package "is limited by its original sentencing intent as expressed by the original total effective sentence," and that "this power is permissive, not mandatory." Id., 563. Thus, among its options, the trial court may "simply eliminate the sentence previously imposed for the vacated conviction, and leave the other sentences intact; or it may reconstruct the sentencing package so as to reach a total effective sentence that is less than the original sentence but more than that effected by the simple elimination of the sentence for the vacated conviction." Id. Regardless of which option it ultimately chooses, "the [trial] court may resentence the defendant to achieve a rational, coherent [sentence] in light of the remaining convictions, as long as the revised total effective sentence does not exceed the original." (Internal quotation marks omitted.) Id.

Thereafter, in *State* v. *Miranda*, supra, 260 Conn. 128–30, this court endorsed *Raucci* and adopted the aggregate package theory. In *Miranda*, the defendant had been convicted of the crimes of assault in the first degree and risk of injury to a child, and was sentenced to forty years imprisonment. Id., 99. Following numerous appeals, this court remanded the case to the Appellate Court with direction to affirm the trial court's judgment

of guilty only as to three counts of assault, and to remand the case to the trial court to resentence the defendant on those counts.[7] Id., 132. With regard to the trial court's restructuring of the defendant's convictions, we noted that "[i]t is axiomatic that a trial court has wide discretion to tailor a just sentence in order to fit a particular defendant and his crimes, as long as the final sentence falls within the statutory limits. . . . This same wide sentencing discretion equally applies to a trial court's restructuring of a sentencing plan for a defendant who has been convicted in a multiple count case and who faces a permissible range of punishment based on the individual counts. [W]hen a defendant is found guilty on a multicount indictment, there is a strong likelihood that the . . . court will craft a disposition in which the sentences on the various counts form part of an overall plan. When the conviction on one or more of the component counts is vacated, common sense dictates that the judge should be free to review the efficacy of what remains in light of the original plan, and to reconstruct the sentencing architecture . . . within applicable constitutional and statutory limits, if that appears necessary in order to ensure that the punishment still fits both crime and criminal." (Internal quotation marks omitted.) Id., 130, quoting *State* v. *Raucci*, supra, 21 Conn. App. 563–64. Accordingly, we concluded that, under the aggregate package theory, the trial court "may reconstruct the sentence in any way necessary to ensure that the punishment fits both

---

[7] On appeal, the Appellate Court initially had reversed the assault convictions, concluding that the defendant had no legal duty to act under the factual circumstances of the case, and had remanded the case for resentencing. *State* v. *Miranda*, supra, 260 Conn. 132. This court then reversed the judgment of the Appellate Court and remanded the case to the Appellate Court for consideration of the defendant's claims of insufficient evidence. Id., 99–100. The Appellate Court affirmed the judgment of conviction of risk of injury to a child, reversed the judgment of conviction of six counts of assault in the first degree and remanded the case with direction to render a judgment of not guilty as to the assault counts. Id., 100.

the crime and the defendant, as long as the final sentence does not exceed [the original sentence of] forty years." *State* v. *Miranda*, supra, 130; see also *State* v. *Miranda*, 274 Conn. 727, 735 n.5, 878 A.2d 1118 (2005) (noting that under aggregate package theory, "we must vacate a sentence in its entirety when we invalidate any part of the total sentence"); *State* v. *Arceniega*, 84 Conn. App. 326, 329, 853 A.2d 586 (recognizing that "the total effective sentence as originally imposed is the backdrop that must be kept in mind, not the individual sentences comprising the total term" [internal quotation marks omitted]), cert. denied, 271 Conn. 926, 859 A.2d 581 (2004).

A

We begin, then, with the defendant's claim that the aggregate package theory does not apply to this specific set of procedural circumstances, namely, where remand was based upon insufficient evidence, and the trial court, therefore, lacked the authority to resentence the defendant on the affirmed convictions. According to the defendant, "it is illogical to allow restructuring of the entire package where the defendant did not actually commit the substantive crime that he was originally convicted of and sentenced for and, instead, he was either acquitted on appeal or found to have committed a different crime with a lesser penalty." We disagree. Contrary to the defendant's contention, we agree with the state that, in *State* v. *Miranda*, supra, 260 Conn. 128–30, this court adopted the aggregate package theory without restriction on the basis of the underlying reason for the remand order. Indeed, there is nothing in either *State* v. *Miranda*, supra, 260 Conn. 128–30, or *State* v. *Raucci*, supra, 21 Conn. App. 557, to suggest any significant distinction between situations in which an appellate court reverses one or more counts of a multicount conviction based on insufficient evidence, as opposed to any other reason. See also *State* v.

*Tabone*, supra, 292 Conn. 427 (omitting mention of any distinction based on underlying reason for remand and resentencing and stating only that, "[t]his court has held that, when a case involving multiple convictions is remanded for resentencing, the trial court is limited by the confines of the original sentence *in accordance with the aggregate package theory*" [emphasis added]).

Moreover, we find instructive decisions from four of our sister states that have applied the aggregate package theory in cases wherein the remand for resentencing resulted from the reversal of one or more convictions on the basis of insufficient evidence. In *Commonwealth v. McHale*, 924 A.2d 664 (Pa. Super. 2007), overruled in part on other grounds as stated in *Commonwealth v. Robinson*, 931 A.2d 15 (Pa. Super. 2007), the Superior Court of Pennsylvania applied the aggregate package theory in upholding the trial court's resentencing of the defendant when his conviction on the most serious charges, two counts of aggravated assault, previously had been reversed on the basis of insufficient evidence. Id., 674–75. After remand, in order to maintain the same total effective sentence, the trial court increased the overall sentence on the surviving counts. Id., 667. Applying the aggregate package theory, the Pennsylvania Court of Appeals upheld the new sentence, noting that "our conclusion is not altered by the fact that remand and [resentencing] were prompted by reversal of two of [the defendant's] convictions. . . . Whether remand is the result of reversal of one or more convictions or vacation of an illegal sentence, we conclude that the trial court has the same discretion and responsibilities in [resentencing]." (Citation omitted.) Id., 673–74.

Similarly, in *State v. Bolsinger*, 738 N.W.2d 643, 644–45 (Iowa App. 2007), the Iowa Court of Appeals applied the aggregate package theory to a case wherein the defendant's most serious convictions, namely, sex-

ual abuse, previously had been reversed due to insufficient evidence. Following remand for resentencing, the trial court had increased the defendant's sentence on the nonreversed counts, sexual exploitation and sexual misconduct, from seventeen to twenty-one years, in order to effectuate its original sentencing intent. Id., 645. On appeal, the Iowa Court of Appeals upheld the judgment of the trial court, emphasizing that the aggregate package theory "best reflects the realities faced by [trial] court judges who sentence a defendant on related counts of an indictment. Sentencing is a fact-sensitive exercise that requires [trial] court judges to consider a wide array of factors when putting together a sentencing package. When an appellate court subsequently reverses a conviction (or convictions) that was part of the original sentence, the [trial] court's job on remand is to reconsider the entirety of the (now-changed) circumstances and fashion a sentence that fits the crime and the criminal. The aggregate [package theory] approach's inherent flexibility best comports with this important goal." (Internal quotation marks omitted.) Id., 646, quoting *United States* v. *Campbell*, 106 F.3d 64, 68 (5th Cir. 1997); see also *State* v. *Keefe*, 573 A.2d 20, 22 (Me. 1990) (aggregate package theory applied regardless of underlying reason for remand because "[c]ommon sense dictates that the [trial court] judge should be free to review the efficacy of what remains in light of the original plan, and to reconstruct the sentencing architecture upon remand, within applicable constitutional and statutory limits, if that appears necessary in order to ensure that the punishment still fits both crime and criminal" [internal quotation marks omitted]); *State* v. *Young*, 379 N.J. Super. 498, 504–505, 879 A.2d 1196 (App. Div. 2005) (following reversal of defendant's burglary conviction on basis of insufficient evidence, trial court did not violate due process or double jeopardy protections by imposing more severe sen-

tence on lone remaining count, assault, in order to achieve same total effective sentence it had originally imposed for convictions on both charges), cert. granted in part, remanded on other grounds, 188 N.J. 349, 907 A.2d 1010 (2006).

These well reasoned decisions support our conclusion that the aggregate package theory, as adopted in *Miranda* and *Raucci*, applies regardless of the underlying reason for remand. "It is . . . clear from . . . decisional law not only that remand for [resentencing] is appropriate when the trial court's sentencing scheme has been disrupted, but also that on remand the trial court is granted considerable discretion in [resentencing] a defendant. *These same principles apply regardless of the underlying reason for the remand and [resentencing]*, e.g., because an appellate court has reversed one of the defendant's multiple convictions . . . or because one component of the original sentencing scheme was above the statutory maximum . . . or because the sentencing court failed to recognize that some of the originally imposed sentences merge . . . ." (Citations omitted; emphasis added.) *Commonwealth* v. *McHale*, supra, 924 A.2d 670. Thus, in the present case, the trial court was not bound by its previously imposed sentence on the narcotics counts but, rather, was free to restructure the sentence on those counts in any way necessary to effectuate its original sentencing intent, so long as the revised total effective sentence did not exceed the original sentence of twenty-five years incarceration. Accordingly, to ensure that "the punishment [fit] both the crime and the defendant"; *State* v. *Miranda*, supra, 260 Conn. 130; the trial court had the authority to exercise its sentencing discretion on remand by increasing the defendant's sentence on the narcotics counts from seven to thirteen years and ordering that they be served consecutively to a ten year sentence for second degree manslaughter.

## B

Having concluded that the aggregate package theory applies in the present case, we next address the defendant's claim that the trial court improperly resentenced him on all of his convictions because the Appellate Court's order had directed the trial court to resentence him only on the reversed conviction.

"Well established principles govern further proceedings after a remand by this court. In carrying out a mandate of this court, the trial court is limited to the specific direction of the mandate as interpreted *in light of the opinion.* . . . This is the guiding principle that the trial court must observe. . . . It is the duty of the trial court on remand to comply strictly with the mandate of the appellate court according to its true intent and meaning. . . . The trial court should examine the mandate and *the opinion of the reviewing court and proceed in conformity with the views expressed therein.* . . . We have rejected efforts to construe our remand orders so narrowly as to prohibit a trial court from considering matters relevant to the issues upon which further proceedings are ordered that may not have been envisioned at the time of the remand. . . . So long as these matters are not extraneous to the issues and purposes of the remand, they may be brought into the remand hearing." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Higgins* v. *Karp*, 243 Conn. 495, 502–503, 706 A.2d 1 (1998).

Applying these principles to the present case, we note that the Appellate Court reversed the judgment of conviction of manslaughter in the first degree and remanded the case "with direction to modify the judgment to reflect a conviction of manslaughter in the second degree . . . and to resentence the defendant in accordance with that conviction." *State* v. *Wade*, supra, 106 Conn. App. 492–93. The defendant contends

that "[t]he clear intent of the mandate based on the Appellate Court's opinion, coupled with the limiting language used in the mandate . . . was that the trial court could only sentence the defendant for a second degree manslaughter conviction." We disagree with the defendant's narrow reading of the Appellate Court's remand order because such a reading elevates form over substance. Indeed, that court's remand order authorized the trial court to resentence the defendant "in accordance with that conviction"; *State* v. *Wade*, supra, 493; referring to the modified conviction of manslaughter in the second degree, which is precisely what the trial court did when it restructured the defendant's total effective sentence in light of its original sentencing plan.[8] Moreover, contrary to the defendant's narrow reading, the Appellate Court's remand order neither stated nor implied that the trial court's action on remand was limited to reimposing a sentence only on the conviction of manslaughter in the second degree. Furthermore, the remand order must be read consistent with Connecticut law governing resentencing, specifically the aggregate package theory as articulated by *Miranda* and *Raucci*, which provides that whenever a reviewing court invalidates "any part of the total sentence," it "must vacate" the total effective sentence "in its entirety." *State* v. *Miranda*, supra, 274 Conn. 735 n.5; see also *State* v. *Elson*, 116 Conn. App. 196, 222, 975 A.2d 678 (2009) ("it is axiomatic that [the Appellate Court], as an intermediate court of appeal, is bound by

---

[8] The defendant also contends that the Appellate Court limited the trial court's ability to restructure his sentence on the drug counts by virtue of the portion of its rescript stating that, "[t]he judgment is affirmed in all other respects." *State* v. *Wade*, supra, 106 Conn. App. 493. We disagree. The most plausible reading of this statement is that it related to the defendant's second claim, namely, that the trial court had improperly charged the jury on the state's burden of proof and the presumption of innocence. See id., 490–92. This claim, which applied to all of the counts on which the defendant was convicted, was rejected by the Appellate Court. Id., 492.

the decisions of our Supreme Court; [the Appellate Court is] not at liberty to contradict those decisions").

II

A

The defendant next claims that the trial court violated his due process rights under the fourteenth amendment to the United States constitution; see footnote 2 of this opinion; because increasing the sentences on the narcotics counts, which had been affirmed by the Appellate Court, was presumptively vindictive under *North Carolina* v. *Pearce,* supra, 395 U.S. 711. Alternatively, the defendant contends that, even if the sentences were not presumptively vindictive, the trial judge demonstrated actual vindictiveness in restructuring the defendant's sentence so as to increase the sentences on the narcotics counts. In response, the state contends that, under the aggregate package theory, the total effective sentence was not increased on remand and, therefore, the trial court's sentence was not presumptively vindictive under *Pearce.* The state also claims that the defendant failed to prove actual vindictiveness. We agree with the state and conclude that the defendant's federal due process rights were not violated.

As a preliminary matter, we note that this issue was properly preserved, as the defendant claimed that the increased sentences were vindictive at the resentencing hearing. Moreover, whether a trial court's decision resentencing a defendant following a successful appeal violates the defendant's federal due process rights presents a question of law subject to plenary review. See *State* v. *Tabone,* supra, 292 Conn. 428. "In [*Pearce*], the United States Supreme Court examined the constitutional constraints imposed on a court which metes out a greater sentence upon retrial than that which the defendant originally received. After holding that neither the equal protection clause nor the double jeopardy

provision imposes an absolute bar to a harsher sentence upon reconviction, the court considered the impact of the due process clause on such a position. . . . Where a conviction has been set aside, the action of a court in imposing a harsher sentence upon reconviction for the purpose of punishing a defendant for exercising his rights in seeking to have the conviction set aside is a flagrant violation of due process of law. . . . Due process requires that vindictiveness must not [play a part in] resentencing that results from a successful attack on a defendant's conviction. . . . A defendant's fear of such vindictive behavior may unconstitutionally deter the exercise of the right to appeal or to attack collaterally a conviction, and thus, due process requires that a defendant be free from such apprehension. . . . To ensure that retaliatory motivation does not [play a part in] the resentencing process, whenever a court imposes a harsher sentence following a new trial, the court must state its reasons upon the record. . . .

"The United States Supreme Court has subsequently examined the applicability of the *Pearce* presumption of vindictiveness. . . .

"The decision in . . . *Pearce* . . . was only premised on the apparent need to guard against vindictiveness in the resentencing process. . . . [I]n certain cases in which action detrimental to the defendant has been taken after the exercise of a legal right . . . it [is] necessary to presume an improper vindictive motive. Given the severity of such a presumption, however— which may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct—[the presumption applies] only in cases in which a reasonable likelihood of vindictiveness exists. . . . The *Pearce* requirements thus do not apply in every case [in which] a convicted defendant receives a higher sentence on retrial. Like other judicially created means of effectuating the rights

secured by the [United States constitution] . . . [the United States Supreme Court has] restricted application of *Pearce* to areas where its objectives are thought most efficaciously served . . . .

"The violation of due process [found in cases] such as *Pearce* . . . does not arise from the possibility that a defendant may be discouraged from exercising legal rights, but instead from the danger that the [s]tate might be retaliating against the accused for lawfully attacking his conviction. . . . [W]here the presumption applies, the sentencing authority or the prosecutor must rebut the presumption that an increased sentence or charge resulted from vindictiveness; where the presumption does not apply, the defendant must affirmatively prove actual vindictiveness. . . .

"The United States Supreme Court . . . revisited this issue in *Alabama* v. *Smith*, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989). *Smith* clarified the scope of the *Pearce* rule, stating that [w]hile the *Pearce* opinion appeared on its face to announce a rule of sweeping dimension, [the court's] subsequent cases have made clear that its presumption of vindictiveness do[es] not apply in every case [in which] a convicted defendant receives a higher sentence on retrial. . . . The court further explained that the application of the *Pearce* rule is limited to circumstances where its objectives are thought most efficaciously served, [namely] those [circumstances] in which there is a reasonable likelihood . . . that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority. . . . On the basis of this conclusion, the court reasoned that when a greater penalty is imposed after trial than was imposed after a prior guilty plea, the increase in sentence is not more likely than not attributable to . . . vindictiveness on the part of the sentencing judge. . . .

"In light of the foregoing precedent, the [defendant] can prevail on his claim of presumptive judicial vindictiveness under *Pearce* and its progeny only if all of the following conditions are met: (1) the sentence he received following his second trial is greater than the sentence he received after his first trial; (2) the circumstances culminating in the greater sentence give rise to a reasonable likelihood that the sentence is the product of actual vindictiveness on the part of the sentencing judge; and (3) that judge failed to articulate reasons sufficient to justify the greater sentence. . . .

"[B]efore undertaking a *Pearce* analysis, we must determine whether the [second] sentence imposed . . . was, in fact, greater than the sentence originally imposed. . . . In determining whether the sentence was more severe, [i]t is the actual effect of the new sentence as a whole on the total amount of punishment lawfully imposed by [the judge] on the defendant . . . which is the relevant inquiry . . . . Further[more], [i]n determining whether the second sentence is harsher than the first, we look not at the technical length of the sentence but at its overall impact [on the defendant]." (Citations omitted; internal quotation marks omitted.) *Connelly* v. *Commissioner of Correction*, 258 Conn. 374, 381–86, 780 A.2d 890 (2001).

In the present case, the second sentence, in the aggregate, was two years shorter than the defendant's original total effective sentence, decreasing from twenty-five years to twenty-three years. Thus, under the aggregate package theory, there is no presumption of judicial vindictiveness in this case. The defendant, nevertheless, asks us to reject the aggregate package theory and to adopt the "remainder aggregate" theory of sentencing (remainder aggregate theory), as applied in the United States Courts of Appeal for the Second and Eleventh Circuits, for purposes of due process analysis. We decline to do so.

As the defendant concedes, the overwhelming majority of the federal circuit courts to have considered the issue of judicial vindictiveness under *Pearce* and its progeny—at least eight out of ten circuits—has applied the aggregate package theory. See, e.g., *Gonzalez* v. *Knowles*, 515 F.3d 1006, 1016–17 (9th Cir. 2008) ("There is no dispute that the aggregate sentence [the defendant] received on remand was less than that which was imposed initially. Nor is there any allegation that the trial court was impermissibly motivated by vindictiveness at the [resentencing] proceeding. . . . Accordingly, there was no fundamental unfairness in allowing the trial court, on remand, to revisit all the components of [his] sentence in fashioning an appropriate judgment."); *United States* v. *Soy*, 413 F.3d 594, 609 n.15 (7th Cir. 2005) ("Our court follows the aggregate package approach when analyzing *Pearce* claims. . . . Under this approach . . . we compare the *total* original punishment to the *total* punishment after resentencing in determining whether the new sentence is more severe." [Citations omitted; emphasis in original; internal quotation marks omitted.]); *United States* v. *Evans*, 314 F.3d 329, 334 (8th Cir. 2002) ("Under [part 5G of the Federal Sentencing Guidelines], an aggregate sentence on remand that equals the initial aggregate sentence simply carries out the district court's original sentencing intent . . . . There is no reason to presume that vindictiveness played any role in this process."), cert. denied, 539 U.S. 916, 123 S. Ct. 2275, 156 L. Ed. 2d 133 (2003); see also *United States* v. *Campbell*, supra, 106 F.3d 68 ("Under [the aggregate package theory], courts compare the total original sentence to the total sentence after resentencing. If the new sentence is greater than the original sentence, the new sentence is considered more severe.").

Conversely, appellate panels in only two of the federal circuits, the Second and Eleventh Circuits, have

applied the remainder aggregate theory. See *United States* v. *Monaco*, 702 F.2d 860, 885 (11th Cir. 1983); *United States* v. *Markus*, 603 F.2d 409, 413 (2d Cir. 1979). "Using this approach, appellate courts compare the district court's aggregate sentence on the nonreversed counts after appeal with the original sentence imposed on those same counts before appeal. If the new sentence on the remaining counts exceeds the original sentence on those counts, the *Pearce* presumption attaches." *United States* v. *Campbell*, supra, 106 F.3d 68. Even in the Second and Eleventh Circuits, however, it is unclear whether the remainder aggregate theory has been wholly adopted as a matter of circuit law. Although the panels in *Markus* (Second Circuit) and *Monaco* (Eleventh Circuit) had applied the remainder aggregate theory, at least two other panels in those same circuits subsequently have applied the aggregate package theory for purposes of determining whether a presumption of judicial vindictiveness arises under *Pearce*.[9] See, e.g., *United States* v. *Mata*, 133 F.3d 200, 202 (2d Cir. 1998) ("[p]articularly in light of the fact that [the defendant's] resentencing left him with an aggregate sentence four years less than that originally imposed, there is no basis for any inference of vindictiveness and therefore no due process violation"); *United States* v. *Lail*, 814 F.2d 1529, 1529–30 (11th Cir.

---

[9] Moreover, we are not convinced, as the defendant contends, that the Second Circuit's decision in *Markus* should carry more weight merely by virtue of the fact that it is a Second Circuit opinion. Although we recognize that "the decisions of the federal circuit in which a state court is located are entitled to great weight in the interpretation of [the federal constitution]"; *State* v. *Faria*, 254 Conn. 613, 625 n.12, 758 A.2d 348 (2000); we also note that "the decisions of the Second Circuit, while often persuasive, do not bind the decisions of Connecticut courts." *Rweyemamu* v. *Commission on Human Rights & Opportunities*, 98 Conn. App. 646, 657, 911 A.2d 319 (2006), cert. denied, 281 Conn. 911, 916 A.2d 51, cert. denied, 552 U.S. 886, 128 S. Ct. 206, 169 L. Ed. 2d 144 (2007). Furthermore, as previously discussed, Second Circuit law on this issue appears to be in conflict; see *United States* v. *Mata*, 133 F.3d 200, 202 (2d Cir. 1998); further diminishing its persuasive value.

1987) ("[w]here an entire conviction is challenged on direct appeal . . . due process [is] not implicated when all sentences, both proper and improper, are remanded, because of the holistic nature of the trial judge's sentencing decision" [internal quotation marks omitted]).

Having concluded that the aggregate package theory applies in the present case and, pursuant to that theory, that because the trial court reduced the defendant's sentence, there is no presumption of judicial vindictiveness under *Pearce*, we next address whether the defendant has established that his revised sentence was motivated by actual vindictiveness. See *Connelly* v. *Commissioner of Correction*, supra, 258 Conn. 384 ("where the presumption [of judicial vindictiveness] does not apply, the defendant must affirmatively prove actual vindictiveness"). The defendant claims that the trial court "failed to articulate any legitimate reason" why it needed to increase the sentences on the narcotics counts. We disagree and conclude that the defendant has failed to establish that the trial court was motivated by actual vindictiveness.

"A trial court should consider all relevant and material factors at the resentencing. . . . Sentencing by its nature is a discretionary decision that requires the trial court to weigh various factors and to strike a fair accommodation between a defendant's need for rehabilitation or corrective treatment, and society's interest in safety and deterrence." (Internal quotation marks omitted.) *People* v. *Woellhaf*, 199 P.3d 27, 31–32 (Colo. App. 2007), cert. denied, 2008 Colo. LEXIS 612 (June 9, 2008), quoting *People* v. *Reed*, 43 P.3d 644, 647 (Colo. App. 2001), cert. denied, 2002 Colo. LEXIS 264 (April 8, 2002). In the present case, the record of the resentencing hearing "reflects a wholly logical, nonvindictive basis" for the twenty-three year sentence; *Connelly* v. *Commissioner of Correction*, supra, 258 Conn. 391; demonstrating that

the trial court had considered all of the relevant factors, including the nature of the crime, the gravity of the loss suffered by the victim's family, the defendant's conduct and, in particular, his unwillingness to accept certain responsibilities, the need to deter similar offenses in the future by the defendant and other similarly situated individuals, and the court's original sentencing intent in fashioning a total aggregate prison term of twenty-five years.[10] The defendant, moreover, points to no evidence to suggest that the twenty-three year sentence on remand was imposed in retaliation for his successful appeal of the first degree manslaughter conviction, or for any other improper reason. We therefore reject the defendant's claim of actual vindictiveness and conclude that the defendant's federal due process rights were not violated.

B

The defendant next claims that the increase of his sentences on the narcotics counts violated his due process rights under article first, § 8, of the Connecticut constitution. See footnote 3 of this opinion. Specifically, the defendant claims that, if this court concludes that the trial court's decision to resentence him on his narcotics convictions was proper under the aggregate package theory as set forth in *Raucci*, pursuant to the state constitution, we should limit application of that theory to "merger-type cases" and not apply it to situa-

---

[10] For instance, the trial court considered, inter alia, "the facts of the case, the facts the jury found credible, the defendant, the Appellate Court's decision and the charges that he was found guilty of beyond a reasonable doubt by a jury . . . [the need] to punish the defendant for conduct that he was found guilty of . . . to deter the defendant and those similarly situated from engaging in this type of conduct in the future . . . and . . . some rehabilitative aspect." The court also noted that it "interprets [*Miranda*] and [*Raucci*] to allow [it] to reconstruct the sentence in any way necessary to ensure that the punishment fits both the crime and the defendant, as long as the final sentence does not exceed, in this particular case, twenty-five years."

tions wherein a defendant successfully has challenged a conviction on sufficiency grounds, and instead utilize the remainder aggregate theory. In response, the state contends that, under *State* v. *Geisler*, 222 Conn. 672, 685, 610 A.2d 1225 (1992), the defendant's state due process rights were not violated when the trial court restructured his sentence using the aggregate package theory.

We begin with the reviewability of the defendant's state constitutional claim. Although the defendant did not claim at the resentencing hearing that the application of *Raucci* should be limited under the state constitution, this claim is reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), whereby "a defendant may prevail on unpreserved claims only if: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial." (Internal quotation marks omitted.) *State* v. *Foreman*, 288 Conn. 684, 692–93 n.6, 954 A.2d 135 (2008). We conclude that the defendant's claim, namely that application of the aggregate package theory violates his state due process rights, is of constitutional magnitude and, also, that the record is adequate to determine whether there was constitutional error requiring further proceedings. Accordingly, we turn to the merits of the defendant's state constitutional claims.

"It is well established that federal constitutional and statutory law establishes a minimum national standard

for the exercise of individual rights and does not inhibit state governments from affording higher levels of protection for such rights. . . . Furthermore, although we often rely on the United States Supreme Court's interpretation of the amendments to the constitution of the United States to delineate the boundaries of the protections provided by the constitution of Connecticut, we have also recognized that, in some instances, our state constitution provides protections beyond those provided by the federal constitution, as that document has been interpreted by the United States Supreme Court. . . . The analytical framework by which we determine whether, in any given instance, our state constitution affords broader protection to our citizens than the federal constitutional minimum is well settled. In *State* v. *Geisler*, [supra, 222 Conn. 684–86], we enumerated the following six factors to be considered in determining that issue: (1) persuasive relevant federal precedents; (2) the text of the operative constitutional provisions; (3) historical insights into the intent of our constitutional forebears; (4) related Connecticut precedents; (5) persuasive precedents of other state courts; and (6) contemporary understandings of applicable economic and sociological norms, or as otherwise described, relevant public policies."[11] (Internal quotation marks omitted.) *State* v. *McKenzie-Adams*, 281 Conn. 486, 509–10, 915 A.2d 822, cert. denied, 552 U.S. 888, 128 S. Ct. 248, 169 L. Ed. 2d 148 (2007).

We begin our *Geisler* analysis by considering the operative constitutional text, and we agree with the

[11] "The *Geisler* factors serve a dual purpose: they encourage the raising of state constitutional issues in a manner to which the opposing party—the state or the defendant—can respond; and they encourage a principled development of our state constitutional jurisprudence. Although in *Geisler* we compartmentalized the factors that should be considered in order to stress that a systematic analysis is required, we recognize that they may be inextricably interwoven. . . . Finally, not every *Geisler* factor is relevant in all cases." (Citation omitted.) *State* v. *Morales*, 232 Conn. 707, 716 n.10, 657 A.2d 585 (1995).

state that the language of article first, § 8, does not support the defendant's claim of greater protections than are provided under the fourteenth amendment to the United States constitution. Indeed, we previously have recognized that the text of the state and federal due process clauses are virtually identical; id., 511; compare footnotes 2 and 3 of this opinion; and that "[t]he textual similarity between federal and state due process clauses undermines the defendant's claim that the state constitution affords greater protection . . . and, instead, 'support[s] a common source and, thus, a common interpretation of the provisions.' " *State* v. *McKenzie-Adams*, supra, 281 Conn. 511, quoting *State* v. *Ledbetter*, 275 Conn. 534, 562, 881 A.2d 290 (2005), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006). Nevertheless, we continue our inquiry, because "this court has never considered itself bound to adopt the federal interpretation in interpreting the Connecticut constitution. Our system of federalism requires no less. But of even weightier concern is the authority of our state constitution, the fundamental charter of our state, and it is this court's duty to interpret and enforce our constitution. Here we note that the United States Supreme Court or its individual members have often called the attention of state courts to their independent responsibility for the constitutional laws of their states. Thus, in a proper case, 'the law of the land' may not, in state constitutional context, also be 'the law of the state of Connecticut.' " *State* v. *Dukes*, 209 Conn. 98, 113–14, 547 A.2d 10 (1988).

We also agree with the state that the vast majority of federal case law governing resentencing similarly does not support the defendant's interpretation of the state constitution.[12] See part II A of this opinion. With

---

[12] The defendant relies on *United States* v. *Pisani*, 787 F.2d 71 (2d Cir. 1986), to support a distinction based on the underlying reason for remand and resentencing. We do not, however, find *Pisani* supportive of the defendant's argument, because, in that case, the Second Circuit used a count-by-count approach to sentencing, rather than the aggregate approach, as it previously

respect to Connecticut case law, in *Miranda*, this court adopted the aggregate package theory as applied in *Raucci without restriction* and, therefore, the theory applies equally to cases, such as the present case, which involve reversals for insufficient evidence, as it does to all other cases. *State* v. *Miranda*, supra, 260 Conn. 128–30; *State* v. *Raucci*, supra, 21 Conn. App. 562–63. Furthermore, the defendant fails to point to any case law wherein this court has afforded a criminal defendant greater protection under the due process clause of our state constitution in the sentencing context and, indeed, we strictly have followed *Pearce* and its progeny with respect to judicial vindictiveness claims arising under the federal due process clause.[13] See, e.g., *State* v. *Revelo*, 256 Conn. 494, 514, 775 A.2d 260 ("[T]he trial court imposed a more severe sentence on the defendant solely because he asserted his right to a judicial ruling on his motion to suppress. In doing so, the trial court unfairly punished the defendant for exercising that right

had done in *United States* v. *Diaz*, 778 F.2d 86 (2d Cir. 1985), not because the reason for remand was insufficient evidence, but because the vacated counts were not in any substantial way connected with the affirmed count. See *United States* v. *Pisani*, supra, 76 ("[t]he joining in a single case of [the affirmed count] and the counts on which [the defendant's] sentences were vacated was a matter of trial convenience").

[13] We note that the issue of the scope of the state due process clause in the context of sentencing is, in essence, one of first impression, because only two of the cases involving vindictiveness claims included state due process challenges under *Pearce* and, in both of these cases, the state due process claim was not reached. See *State* v. *Coleman*, 242 Conn. 523, 534, 700 A.2d 14 (1997) ("*[w]e need not decide and, therefore, express no opinion regarding, the defendant's state constitutional claim* because we conclude, under our supervisory power, that, upon request by a defendant, a trial court should articulate its reasons for imposing a longer sentence after trial than was imposed previously pursuant to that defendant's vacated guilty plea" [emphasis added]); see also *State* v. *Faria*, 254 Conn. 613, 628–29, 758 A.2d 348 (2000) (not reaching state due process claim wherein "[t]he defendant, relying on *State* v. *Coleman*, supra, [523], also argues that the constitution of Connecticut, article first, §§ 8 and 9, required the second sentencing court to articulate the reasons for the sentence imposed because there was a reasonable likelihood that the sentence would be perceived as vindictive," because "*Coleman* is not applicable to the present case").

in violation of the federal due process clause."), cert. denied, 534 U.S. 1052, 122 S. Ct. 639, 151 L. Ed. 2d 558 (2001); *State* v. *Faria*, 254 Conn. 613, 626, 758 A.2d 348 (2000) ("there is no presumption of vindictiveness under *Pearce* simply because the underlying offense for which the second sentencing court enhanced the sentence pursuant to [General Statutes] § 53a-40 [f] was different from the offense for which the original court enhanced the sentence"); *State* v. *Carpenter*, 220 Conn. 169, 175, 595 A.2d 881 (1991) ("[i]n light of the fact that due process concerns the actual impact of resentencing on a defendant, not percentages, the defendant's foray into mathematical comparisons is inapposite"), cert. denied, 502 U.S. 1034, 112 S. Ct. 877, 116 L. Ed. 2d 781 (1992).

Moreover, in various other contexts involving criminal law and procedure, we previously have held that the due process clause of our state constitution provides no greater protection than does its federal counterpart. See, e.g., *State* v. *Ledbetter*, supra, 275 Conn. 560–61 (state due process clause does not require modification of federal test governing admissibility of eyewitness identifications); *State* v. *Rizzo*, 266 Conn. 171, 185, 833 A.2d 363 (2003) (state due process clause does not require that capital jury be instructed that, to impose death penalty, aggravating factors must outweigh mitigating factors by quantum or degree measured "beyond a reasonable doubt"); but see *State* v. *Morales*, 232 Conn. 707, 717–18, 657 A.2d 585 (1995) ("we have held that the due process clause of the Connecticut constitution shares but is not limited by the content of its federal counterpart" [internal quotation marks omitted]); *State* v. *Miller*, 29 Conn. App. 207, 222–23, 614 A.2d 1229 (1992) (departure from federal constitutional precedent is usually justified only when United States Supreme Court "has created exceptions to or deviated from rules previously enunciated by it" [internal quotation marks

omitted]), aff'd, 227 Conn. 363, 630 A.2d 1315 (1993). We therefore agree with the state that Connecticut case law does not support the defendant's arguments in support of a distinction based on the underlying reason for remand and resentencing.

With respect to the relevant constitutional history, the defendant contends that the aggregate package theory is incompatible with Connecticut's sentencing scheme, which has "always required judges to sentence a defendant for one crime at a time," as well as its treatment of persons who have been acquitted of crimes. We disagree. We find nothing about the aggregate package theory that contradicts or undermines the constitutional history of due process in this state. Instead, we conclude that this *Geisler* factor is neutral because "[n]either the defendant nor the state identifies any relevant evidence of the intent of the framers of our constitution that helps clarify whether they intended to provide broader protection than the federal constitution in this area." *State* v. *Ledbetter*, supra, 275 Conn. 563; see also generally *State* v. *Morales*, supra, 232 Conn. 718 n.13 (noting historical antecedents of state due process clause, from mid-seventeenth century); *State* v. *Lamme*, 216 Conn. 172, 178–80, 579 A.2d 484 (1990) (same); 2 Z. Swift, A System of the Laws of the State of Connecticut (1796) pp. 296–317 (setting forth penal system that existed in Connecticut at time prior to adoption of state due process clause, but presenting no discussion of resentencing).

With respect to the persuasive precedents of other state courts, the defendant concedes that the majority of jurisdictions that have considered the issue of resentencing in multicount cases—eighteen of thirty-one—has adopted the aggregate package theory and, of these eighteen jurisdictions, ten have rejected federal-only or

federal and state due process challenges to the theory;[14] four of which, like the present case, involved reversals of one or more convictions for insufficient evidence. See cases cited in part I A of this opinion. For purposes of this *Geisler* analysis, the defendant cites *Blake* v. *State*, 272 Ga. App. 402, 612 S.E.2d 589 (2005), and *State* v. *Church*, 262 Wis. 2d 678, 665 N.W.2d 141 (2003), in support of a due process distinction based on the underlying reason for remand and resentencing, namely, by applying the remainder aggregate theory to cases involving reversal for insufficient evidence, and the aggregate package theory to other reversals.[15] We disagree that these cases are persuasive.

In *Blake* v. *State*, supra, 272 Ga. App. 406, the Georgia Court of Appeals applied a count-by-count approach to sentencing, akin to the remainder aggregate theory, rather than an aggregate approach, to conclude that the defendant's second sentence was more severe than his original sentence, for purposes of the *Pearce* vindictiveness analysis. Reliance on *Blake*, however, is misplaced because, in that case, the defendant's conviction was not reversed on the ground of insufficient evidence

---

[14] See *People* v. *Woellhaf*, supra, 199 P.3d 31–32 (federal); *White* v. *State*, 576 A.2d 1322, 1328–29 (Del. 1990) (federal); *Blake* v. *State*, 272 Ga. App. 402, 406, 612 S.E.2d 589 (2005) (federal); *State* v. *Bolsinger*, supra, 738 N.W.2d 645–47 (federal); *State* v. *Neville*, 572 So. 2d 1161, 1163–66 (La. App. 1990) (federal), cert. denied, 576 So. 2d 46 (La. 1991); *State* v. *Keefe*, supra, 573 A.2d 21–22 (federal and state); *State* v. *King*, 275 Neb. 899, 902–907, 750 N.W.2d 674 (federal), cert. denied, 555 U.S. 931, 129 S. Ct. 316, 172 L. Ed. 2d 229 (2008); *State* v. *Young*, supra, 379 N.J. Super. 505–509 (federal); *State* v. *Larson*, 56 Wash. App. 323, 783 P.2d 1093 (1989) (federal and state), review denied, 114 Wash. 2d 1015, 791 P.2d 534 (1990); *State* v. *Church*, 262 Wis. 2d 678, 682, 665 N.W.2d 141 (2003) (federal).

[15] The defendant also discusses state court decisions from the minority of states that apply the remainder aggregate theory or another theory of sentencing than the aggregate package theory. After careful review of these cases, however, we conclude that, although they may reject the aggregate package theory, they do not offer any support to the defendant's proposal for a due process distinction based upon the underlying reason for remand and resentencing.

but, rather, because of improper venue for the relevant charge. Id., 402. Moreover, the court in *Blake* distinguished the facts before it from previous cases wherein it had used an aggregate approach to sentencing by noting that in those previous cases, "the trial judge was resentencing the defendant for all of the crimes charged against the defendant *arising out of the same facts and circumstances that were properly before the court.*" (Emphasis added.) Id., 404–405. Conversely, in *Blake*, because the conviction was reversed on jurisdictional grounds, namely, lack of venue, "the [trial] judge . . . [was] no longer presiding over all of the charges *arising out of the same facts and circumstances.*" (Emphasis added.) Id., 405. As a result, the court noted that "[a]nother [trial] judge in another court could sentence [the defendant] for the kidnapping charge" and, therefore, the count-by-count approach applied, rather than the aggregate approach. Id. Thus, *Blake* is inapposite because, unlike in the present case, the relevant crimes did not arise out of the same transaction.[16]

We also find inapposite *State* v. *Church,* supra, 262 Wis. 2d 681, wherein the Wisconsin Supreme Court concluded that "resentencing on convictions that remain intact after an appellate court reverses and vacates on one or more counts in a [multicount] case

---

[16] We note that the Supreme Court of Georgia recently has granted certification to review the following issue: "What is the appropriate analysis for determining whether a trial court's [resentencing] of a defendant results in a more severe sentence under [*Pearce*]? Compare *Anthony* v. *Hopper,* 235 Ga. 336, 219 S.E.2d 413 (1975) and *Blake* v. *State,* [supra, 272 Ga. App. 402]." *Adams* v. *State,* Docket No. S09G1927, 2009 Ga. LEXIS 609 (Ga. October 5, 2009). In *Anthony,* the Supreme Court of Georgia applied a count-by-count approach in determining that a defendant's sentence had been increased when the trial court had eliminated a three year sentence on one count, but added three years to the defendant's sentence on another count. *Anthony* v. *Hopper,* supra, 337–38. *Adams,* a pending opinion, may very well clarify the issue for the state of Georgia but, until then, and for purposes of our *Geisler* analysis, the simple fact that Georgia's highest court has certified this question for review further diminishes *Blake*'s persuasive value.

is not always required. Where, as here, the vacated count *did not affect the overall dispositional scheme of the initial sentence,* resentencing on the remaining counts is unnecessary and therefore not required." (Emphasis added.) *Church* is distinguishable because the conviction that had been reversed was subject to a concurrent sentence and, therefore, reversal "would not, in itself, affect the duration of [the defendant's] prison sentence or of his subsequent [probation] . . . ." (Internal quotation marks omitted.) Id., 684. Thus, we conclude that neither *Blake* nor *Church* supports the defendant's proposed rule drawing a distinction on the basis of the underlying reason for remand, namely, between cases wherein reversal was based on insufficient evidence, and cases involving all other reasons for remand.

With respect to the relevant economic and sociological factors, the defendant contends that the aggregate package theory presents an opportunity for a trial judge to engage in vindictive resentencing, and provides no mechanisms to prevent such retaliation. We disagree. The analysis in *Pearce* provides the defendant with sufficient protection against judicial vindictiveness. See part II A of this opinion. Moreover, when the reversed conviction is factually related to the convictions that are subject to resentencing, the reasoning underlying the aggregate package theory is more persuasive than the reasoning underlying the remainder aggregate theory because the aggregate package theory best reflects the reality that "[s]entencing is a fact-sensitive exercise that requires [trial] judges to consider a wide array of factors when putting together a sentencing package." (Internal quotation marks omitted.) *State* v. *Bolsinger,* supra, 738 N.W.2d 646. "The myriad . . . factors underlying the original sentence in a multiple count case are not necessarily altered when a defendant successfully appeals his conviction on one count." *United States* v. *Pimienta-*

*Redondo*, 874 F.2d 149 (1st Cir.), cert. denied, 493 U.S. 890, 110 S. Ct. 233, 107 L. Ed. 2d 185 (1989). Accordingly, "[w]hen an appellate court subsequently reverses a conviction (or convictions) that was part of the original sentence, the [trial] court's job on remand is to reconsider the entirety of the (now-changed) circumstances and fashion a sentence that fits the crime and the criminal. . . . The aggregate approach's inherent flexibility best comports with this important goal." (Citation omitted.) *United States* v. *Campbell*, supra, 106 F.3d 68. Failing to accommodate the trial court's original sentencing intent "could in some cases unnecessarily and ill-advisedly hamper the sound discretion which lies with the trial courts on matters of sentencing in this [jurisdiction]." *Commonwealth* v. *McHale*, supra, 924 A.2d 673. We therefore conclude that the relevant policy considerations weigh in favor of our continued use of the aggregate package theory, regardless of the underlying reason for resentencing.

Having performed a complete *Geisler* analysis of the defendant's state constitutional claim in this appeal, we conclude that article first, § 8, does not provide greater protection than does the federal constitution with respect to resentencing and application of the aggregate package theory.

### III

Finally, the defendant claims, in the alternative, that we should invoke our supervisory powers to preclude trial courts from increasing individual sentences that have been affirmed on appeal when a case involving multiple convictions is remanded for resentencing because one or more of the convictions was reversed for insufficient evidence. In support of this claim, the defendant relies primarily on the same policy arguments advanced in his *Geisler* analysis. In response, the state contends that, because of the "extraordinary" nature

of this remedy, its use is not appropriate in this case. We agree with the state and, therefore, decline to exercise our supervisory powers to impose the rule proposed by the defendant.

"Although '[a]ppellate courts possess an inherent supervisory authority over the administration of justice . . . [that] authority . . . is not a form of free-floating justice, untethered to legal principle.' . . . 'Our supervisory powers are not a last bastion of hope for every untenable appeal. They are an *extraordinary* remedy to be invoked only when circumstances are such that the issue at hand, while not rising to the level of a constitutional violation, is nonetheless of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole. . . . Constitutional, statutory and procedural limitations are generally adequate to protect the rights of the defendant and the integrity of the judicial system. Our supervisory powers are invoked only in the rare circumstance where these traditional protections are inadequate to ensure the fair and just administration of the courts.' " (Citation omitted; emphasis in original.) *State* v. *Coward*, 292 Conn. 296, 315, 972 A.2d 691 (2009).

For the reasons previously discussed, we conclude that the traditional due process protections embodied in our federal and state constitutions are adequate to ensure the fair and just administration of the courts when it comes to sentencing. Furthermore, as previously discussed, the aggregate package theory fully satisfies those protections and best comports with the goals of sentencing. Accordingly, we decline the defendant's invitation to exercise our supervisory powers in the present case.

The judgment is affirmed.

In this opinion the other justices concurred.